CARMEN VÉLEZ RODRÍGUEZ, recurrida, *v.* ADMINISTRACIÓN DE REGLAMENTOS Y PERMISOS, apelada, y EDWIN RIVERA DELGADO, opositor y peticionario.

*Número:* CC-2004–1052      *Resuelto:* 21 de abril de 2006

*Julio Bonilla Rivera*, abogado de la parte opositora y peticionaria; *Ileana Guzmán Carreras*, abogado de la parte recurrida.

LA JUEZA ASOCIADA SEÑORA FIOL MATTA emitió la opinión del Tribunal.

El Tribunal de Apelaciones se negó a expedir el recurso de revisión solicitado en este caso, avalando de esa forma la determinación de la Junta de Apelaciones sobre Construcciones y Lotificaciones (J.A.C.L.) que revocó a la Administración de Reglamentos y Permisos (A.R.Pe.). Ambos organismos apelativos entendieron que el permiso de uso solicitado era "permitido ministerialmente", por lo cual A.R.Pe. no tenía discreción para denegarlo. Nos corresponde, pues, resolver si efectivamente se trata de un uso permitido "ministerialmente" por el Reglamento de Zonificación de Puerto Rico o si A.R.Pe. actuó correctamente al considerarla según las disposiciones del mecanismo de "excepciones" al amparo de dicho reglamento. Además, debemos determinar si J.A.C.L. está limitada en su función como agencia apelativa administrativa por la norma de deferencia aplicable a la revisión judicial.

I

La Sra. Carmen Vélez Rodríguez presentó ante A.R.Pe. una solicitud de permiso de uso para operar un centro de cuidado diurno infantil. El centro se ubicaría en los bajos de la residencia de la solicitante, en un solar con cabida superficial de 800.001 metros cuadrados en el barrio Jagual del Municipio de Gurabo. Dicha propiedad es la última de diez solares a lo largo de una calle sin salida, en un área zonificada como Distrito Residencial 1 (R-1). De los diez solares en dicha área, nueve están edificados; seis con viviendas y tres con estructuras utilizadas para fines comerciales. Entre estos usos comerciales, uno es una compañía de pinturas, el otro un taller de mecánica y el tercero, localizado en la propiedad colindante a la residencia de la señora Vélez Rodríguez, es un centro de cuidado diurno. El centro de cuido propuesto por la señora Vélez

Rodríguez operaría de lunes a viernes, de 6:00 A.M. a 6:00 P.M., con una matrícula de veinticuatro niños y cuatro empleados.

La señora Vélez Rodríguez solicitó que su caso se evaluara conforme al mecanismo de excepciones dispuesto en el Reglamento de Zonificación de Puerto Rico. La proponente notificó de la solicitud a los dueños de las propiedades colindantes del sector. En vista de la oposición de algunos vecinos de la propiedad a la concesión del permiso, se celebró una vista administrativa ante un oficial examinador de A.R.Pe. En la vista testificaron la proponente y algunos de los vecinos opositores. Entre éstos testificó la Sra. Ana I. Tañón, quien se opuso al uso propuesto por ser ella dueña del otro centro de cuido que opera en la misma calle. También declaró el Lcdo. Edwin Rivera Delgado, residente de la propiedad colindante al solar bajo estudio. El licenciado Rivera Delgado se opuso por entender que el centro incrementaría el serio problema de tráfico en la calle sin salida que da acceso a todos los solares, pues la propiedad de la proponente se encuentra al final de la calle y colinda con el centro de cuido de la señora Tañón, que atiende alrededor de treinta niños. Alegaron los opositores que el centro existente, de por sí, causa problemas de tráfico debido a la gran cantidad de vehículos que llegan al lugar.

La proponente, señora Vélez Rodríguez, reconoció que en el área había algún problema de tráfico por los negocios allí situados, debido a que sólo había una entrada a la comunidad y que ésta permite el acceso de un solo vehículo a la vez. En específico, expresó que la operación del taller de pinturas requería la entrada y salida constante de varios vehículos y equipo pesado. Además, admitió que el limitado espacio de estacionamiento del centro de cuido ya existente provocaba que sus empleados y visitantes utilizaran el redondel que colinda con el predio para el cual se solicita el permiso. No obstante, adujo que la operación del centro de cuido propuesto no causaría mayores problemas al sector.

Una vez concluida la vista, el oficial examinador recomendó denegar el permiso de uso solicitado. Concluyó que el aumento en el flujo de vehículos en la zona afectaría la calidad de vida de los vecinos, ya que "la propiedad ubica al final de una calle sin salida y en especial que al frente de ésta existe un centro de cuido en operación". A.R.Pe. acogió las conclusiones del oficial examinador y emitió una resolución en la que denegó la solicitud presentada por la señora Vélez Rodríguez.

Así las cosas, la señora Vélez Rodríguez presentó oportunamente un escrito de apelación ante la la J.A.C.L. Alegó que la estructura física, diseño y cabida de su propiedad provee espacio para estacionamiento y un área de viraje suficiente para los vehículos que entren al predio, lo que facilita el flujo eficiente y planificado del tráfico.

La J.A.C.L. celebró una vista en la cual las partes tuvieron la oportunidad de presentar prueba, que fue muy similar a la presentada ante A.R.Pe. Concluida la vista, J.A.C.L. revocó la determinación de A.R.Pe. Concluyó que los reglamentos aplicables permitían el uso solicitado *ministerialmente* en un distrito R-1, por lo cual no era necesario utilizar el mecanismo de excepciones. También determinó que el uso solicitado era viable, porque las características de la propiedad eran ideales para ello. Indicó, además, que dicho uso era necesario, dada la realidad actual de la familia puertorriqueña, en la que usualmente ambos padres trabajan fuera del hogar. Por último, expresó que denegar el permiso penalizaría a la proponente quien, a su entender, cumplió con los requisitos reglamentarios "a consecuencia de otros usos existentes en el sector que a juicio de la parte opositora perjudican su calidad de vida". Por lo tanto, la J.A.C.L. autorizó el permiso de uso solicitado por la señora Vélez Rodríguez, con la sola condición de que habilitara un área para el recogido y entrega de niños.

El licenciado Rivera Delgado solicitó la reconsideración oportunamente. La agencia la declaró "sin lugar", luego de lo cual el licenciado Rivera Delgado solicitó al Tribunal de Apelaciones que revisara la decisión de la J.A.C.L. Alegó que la J.A.C.L. actuó de manera arbitraria y caprichosa al celebrar una nueva vista y al sustituir el criterio de A.R.Pe. por el suyo. Arguyó que la agencia apelada abusó de su discreción al otorgar el permiso solicitado, aun cuando éste trastocaría la seguridad, la salud y el bienestar de la comunidad, además de afectar el valor de sus propiedades. Sostuvo, además, que el permiso de uso solicitado tenía que ser evaluado por el mecanismo de excepciones, el cual requiere el análisis de varios factores, y que en última instancia la aprobación o denegación del permiso es un ejercicio de adjudicación *discrecional* y no *ministerial.*

El tribunal apelativo denegó la expedición del recurso solicitado. Concluyó que la J.A.C.L. tenía facultad en ley para llegar a sus propias conclusiones, y que su determinación fue razonable y sustentada por su conocimiento especializado, por lo cual merecía la mayor deferencia judicial. Inconforme, el licenciado Rivera Delgado nos solicita la revocación de esta decisión del foro apelativo. Alega que ese tribunal erró al autorizar el permiso solicitado, ignorando el interés público y comunitario, y al permitir a la J.A.C.L. sustituir el criterio de la agencia administrativa de instancia por el suyo. Además, nuevamente arguye que se cometió un error al considerar el uso solicitado como de aprobación ministerial, a pesar de haberse utilizado el mecanismo de excepción, cuya aprobación es de carácter discrecional.

Examinado el recurso, ordenamos a la parte recurrida mostrar causa por la cual no debíamos expedir el auto y revocar la resolución del tribunal apelativo. Con la comparecencia de ambas partes, procedemos a expedir y resolver el recurso presentado.

## II

Nuestro derecho administrativo se fundamenta en una actitud de gran consideración y deferencia por parte de los tribunales a las decisiones de las agencias administrativas. De ahí que los procesos administrativos y las determinaciones de hechos de las agencias estén cobijados por una presunción de regularidad y corrección. Por eso, la revisión judicial se limita a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si ésta actuó de manera arbitraria, caprichosa o ilegal.

Subyace a esta actitud deferencial el respeto por nuestro sistema constitucional de separación de poderes y el reconocimiento de que las agencias ejecutivas poseen conocimientos y experiencias especializados sobre los asuntos que les han sido delegados. *Rivera Concepción v. A.R.Pe.*, 152 D.P.R. 116 (2000); *Misión Ind. P.R. v. J.C.A.*, 145 D.P.R. 908 (1998). Este rol judicial inherentemente limitado está cimentado también en la teoría, traducida a política pública, de las ventajas institucionales de un sistema regulatorio predominantemente técnico y especializado, que aunque es producto de acción legislativa es implementado por la Rama Ejecutiva, y que reserva al Poder Judicial una función más bien correctora de los excesos o abusos de discreción en que incurran las agencias que administran este sistema y de sus actuaciones *ultra vires*. De ahí que la doctrina de deferencia judicial presupone una participación restringida y limitada de los tribunales en la revisión de las acciones administrativas, pues lo que se busca es "evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del *tribunal revisor*". (Énfasis suplido.) *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 D.P.R. 269, 282 (2000), citando a *Reyes Salcedo v. Policía de P.R.*, 143 D.P.R. 85, 95 (1997). Es palpable,

pues, que la norma de deferencia, en su propósito, justificación e historial, presupone que la relación de revisión se da entre una agencia administrativa y un tribunal.

Sin embargo, el peticionario, licenciado Rivera Delgado, nos solicita que nos apartemos de este esquema de revisión judicial de decisiones administrativas para sostener que la J.A.C.L. está igualmente limitada en su función apelativa frente a las decisiones de A.R.Pe. Aduce que la norma que limita el alcance de la intervención de los tribunales en la revisión de decisiones administrativas le aplica a la J.A.C.L., porque ésta ejerce funciones de carácter cuasi judicial. La opinión concurrente propone adoptar esta visión y concluye que la J.A.C.L. le debe a A.R.Pe. la misma deferencia que debe mostrar un tribunal al revisar las determinaciones finales de una agencia.

■ Concluimos, por el contrario, que el peticionario no tiene razón al alegar que la J.A.C.L. se excedió en su función revisora y que, por consiguiente, abusó de su discreción al sustituir el criterio de la agencia apelada por el suyo. La norma de deferencia judicial, como bien lo indica el término, sólo aplica cuando un tribunal revisa la actuación de una agencia, y no en la relación entre una agencia apelativa y una agencia que actúa en primera instancia. Además, como veremos, la J.A.C.L. está facultada en ley para formular sus propias determinaciones, e incluso llegar a conclusiones distintas a las de la agencia apelada. Ello no obstante resolvemos, por otras razones, que el Tribunal de Apelaciones erró al negarse a expedir el auto de revisión en este caso.

### III

La Junta de Apelaciones de Planificación, Urbanización y Zonificación fue creada en 1942 junto a la Junta de

Planificación. Ambas formaron parte de lo que sería un nuevo esquema en Puerto Rico para regular el desarrollo urbano y la zonificación, y el uso de los terrenos. Véase la Ley Núm. 213 de 12 de mayo de 1942 (1942 Leyes de Puerto Rico 1107). La Junta de Apelaciones adquirió su actual nombre en 1946, cuando la ley orgánica de la Junta de Planificación fue enmendada para establecer un Negociado de Permisos, que desempeñaría las funciones que hoy ejerce A.R.Pe. En 1950, de acuerdo con un plan de reorganización preparado por el Gobernador de Puerto Rico, el Negociado de Permisos fue transferido para que funcionase bajo la supervisión y dirección de la Junta de Planificación. Por disposición del mismo plan, se suprimió la Junta de Apelaciones de Planificación, Urbanización y Zonificación y sus funciones se transfirieron a la Junta de Planificación. Sin embargo, a finales de la década de los años cincuenta resurge la Junta de Apelaciones sobre Construcciones y Lotificaciones, por virtud de la Ley Núm. 95 de 30 de junio de 1959 (1959 Leyes de Puerto Rico 285), que establece sus facultades y jurisdicción.

■ El rol de la J.A.C.L., como un organismo administrativo de carácter cuasi judicial, fue reafirmado por la Ley Orgánica de la Administración de Reglamentos y Permisos, Ley Núm. 76 de 24 de junio de 1975 (23 L.P.R.A. sec. 71 *et seq.*). Acorde con su título, esta legislación creó también la Administración de Reglamentos y Permisos, agencia que debe aplicar a casos individuales los reglamentos de la Junta de Planificación y está a cargo del proceso de concesión de permisos de uso y construcción. *Asoc., C.D. Octubre v. J.A.C.L.*, 116 D.P.R. 326, 331 (1985). Ambos organismos, la J.A.C.L. y A.R.Pe., formaron parte de un esquema administrativo integrado, encargado de "aplicar y velar por el cumplimiento de las leyes y reglamentos de planificación". *Junta de Planificación v. J.A.C.L.*, 109 D.P.R. 210, 214 (1979).

■ La Junta de Apelaciones fue investida de jurisdic-

ción apelativa para, entre otras, revisar las actuaciones, determinaciones o resoluciones de A.R.Pe. con relación a permisos de construcción, uso de edificios y lotificaciones simples.([1]) Art. 31(a) de la Ley Orgánica de la Administración de Reglamentos y Permisos, 23 L.P.R.A. sec. 72c. Véase, además, la Sec. 23.00 del Reglamento de Procedimientos Adjudicativos de la Administración de Reglamentos y Permisos, Reglamento Núm. 6435 de 19 de abril de 2002. El rol de J.A.C.L. es servir como organismo de apelación interagencial *previo* al trámite de un recurso de revisión judicial ante los tribunales. *Maymí v. Gob. Mun. Aut. Ponce*, 151 D.P.R. 689, 698 (2000); *Junta de Planificación v. J.A.C. L.*, supra, pág. 218.

■ La Junta de Apelaciones no tiene autoridad discrecional en su competencia apelativa, sino que actúa *con* las mismas facultades y los mismos poderes que A.R.Pe., el organismo con jurisdicción original. Esto se desprende del inciso (c)(3) del Art. 31 de la Ley Orgánica de la Administración de Reglamento y Permisos, que dispone que la J.A.C.L. podrá decretar órdenes, requerimientos, resoluciones o las determinaciones que a su juicio deban dictarse y, a tal fin, "tendrá los *mismos poderes del funcionario u organismo de cuya actuación se apela ...*". (Énfasis suplido.) 23 L.P.R.A. sec. 72c(c)(3).

■ Además, el inciso (c)(3) del Art. 31, *supra*, también dispone que antes de decidir la apelación, J.A.C.L. deberá celebrar una vista en la cual participarán la agencia apelada y las partes interesadas o afectadas. En esta vista la J.A.C.L. "podrá recibir toda la prueba que resulte necesaria para adjudicar casos ...". 23 L.P.R.A. sec. 72c(c). Evidentemente, esta disposición permite que una vez se presente la apelación administrativa, la J.A.C.L. pueda

---

([1]) Además, está facultada para revisar determinaciones de la Administración de Reglamentos y Permisos (A.R.Pe.) sobre permiso de uso de solares para áreas de estacionamiento, planos de lotificación y solicitudes de dispensa del cumplimiento de requisitos de un Reglamento de Planificación mediante una concesión o autorización directa.

considerar el caso en todos sus méritos, igual que lo hace A.R.Pe., que es la agencia que actúa en primera instancia. *Junta de Planificación v. J.A.C.L.*, supra, pág. 219.

Obviamente, la J.A.C.L. no está limitada a revisar únicamente la prueba que consideró el funcionario con jurisdicción original en el asunto. *Junta de Planificación v. J.A.C.L.*, supra, págs. 216–217. El historial legislativo revela que el proyecto de la ley orgánica de A.R.Pe. que se presentó originalmente ante la Asamblea Legislativa intentó limitar la evaluación de la J.A.C.L. a la prueba presentada y considerada por el funcionario u organismo apelado. Sin embargo, la J.A.C.L. objetó a que se limitaran de esta forma los poderes que le fueron otorgados por la Ley Núm. 95, *supra*. Al respecto expresó lo siguiente:

> Esta Junta de Apelaciones entiende recomendable que ésta continúe como hasta el presente, recibiendo toda la prueba disponible que ofrezcan las partes, en todos los casos, tanto aquellos en que se han celebrado vista pública ante la agencia apelada como aquellos en que ésta no ha sido celebrada la misma [sic]. *Junta de Planificación v. J.A.C.L.*, supra, pág. 217, citando el *Memorial al Presidente de la Comisión del Desarrollo Socioeconómico y Planificación de la Cámara de representantes sobre P. de la C. 1272*, pág. 12.

En pasadas ocasiones interpretamos que disposiciones de ley similares a la citada, que permiten a organismos apelativos celebrar vistas, recibir pruebas y hacer sus propias determinaciones, establecen en realidad facultades revisoras de la naturaleza de un *juicio de novo*. *Vélez Quiñones v. Srio. de Instrucción*, 86 D.P.R. 755, 759–760 (1962). Al indicar el citado inciso (c) del Art. 31 que se podrá recibir "*toda la prueba* que resulte necesaria" (énfasis suplido), se permite que la revisión de la determinación de A.R.Pe. no esté sujeta sólo al expediente administrativo. La Junta de Apelaciones estaría entonces autorizada a emitir las órdenes y requerir la información que estime pertinente, e incluso a tomar en consideración prueba adicional a la evaluada por la agencia apelada. Dada la am-

plia prerrogativa para solicitar prueba y para evaluarla que la ley le concede a la J.A.C.L., es obligatorio concluir que ésta puede llegar a conclusiones propias a base de la prueba desfilada.(²)

■ De esa forma, el ámbito de revisión de la J.A.C.L. no está limitado por el principio de deferencia judicial. El que la J.A.C.L. sea una agencia de carácter cuasi judicial, no implica que esté obligada a darle deferencia a las determinaciones de hechos y conclusiones de A.R.Pe. Llegar a una conclusión contraria supone una abstracción irrazonable de las disposiciones legales que crean esta agencia apelativa administrativa y establecen sus facultades. Tratándose de una agencia, sería irrazonable aplicarle doctrinas que por su propia naturaleza y razón de ser sólo hacen sentido en un contexto propiamente judicial. Además, limitar a la J.A.C.L. de esta manera tergiversa el esquema administrativo adoptado en 1976 que, por las razones que fueran, refleja la intención legislativa de dar a la J.A.C.L. una función más amplia que la de un tribunal revisor.

## IV

■ Una vez agotado el proceso administrativo, *que incluye la apelación interagencial,* la decisión final deberá revisarse judicialmente dentro de los parámetros del principio de deferencia judicial y su corolario, la presunción de regularidad y corrección de los procesos y las decisiones administrativas. *Rivera Concepción v. A.R.Pe.*, 152 D.P.R. 116, 122–123 (2000). Opera entonces el esquema de revisión fundado en la especialización de las agencias que fue desarrollado por la jurisprudencia y recogido años después en la Ley de Procedimiento Administrativo Uniforme del

---

(²) Véase, *e.g.*, la sentencia dictada en *Ayala Alicea v. E.L.A.*, 118 D.P.R. 507, 510 (1987).

Estado Libre Asociado de Puerto Rico (L.P.A.U.), 3 L.P.R.A. secs. 2101–2201.

■■■■■ Al igual que A.R.Pe., la J.A.C.L. evalúa factores técnicos de gran complejidad. *Asoc., C.D. Octubre v. J.A.C.L.*, supra, pág. 333. Véase, además, *A.R.P.E. v. Ozorez Pérez*, 116 D.P.R. 816, 821 (1986). Por eso, los tribunales debemos revisar las decisiones de la J.A.C.L., como organismo apelativo administrativo, de acuerdo con las normas derivadas del principio de deferencia.[3] Dentro de este marco normativo, debemos concluir que en esta ocasión, aunque la J.A.C.L. no excedió el alcance de su facultad apelativa al revisar la decisión de A.R.Pe., erró en su dictamen final, según explicaremos a continuación.

La J.A.C.L. tomó su decisión tras celebrar una vista en la que participaron las mismas partes que lo hicieron en primera instancia en el procedimiento administrativo, así como la agencia apelada, A.R.Pe. Todas tuvieron la oportunidad de comparecer, ser oídas y presentar prueba. Tanto A.R.Pe. como la J.A.C.L. procedieron conforme a los procesos ordenados por las leyes aplicables. Ambas agencias aquilataron la prueba presentada por las partes interesadas, los requisitos y las características del distrito, las actividades comerciales realizadas en el sector y el impacto del uso solicitado en el área. No obstante, llegaron a conclusiones distintas. A.R.Pe. determinó que el uso solicitado no era viable, por los efectos adversos que tendría en el

---

[3] La Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (LPAU) dispone que las determinaciones de hechos de las agencias serán sostenidas por el tribunal, si se fundamentan en evidencia sustancial que obra en el expediente administrativo, mientras que las conclusiones de derecho serán revisables en todos sus aspectos. 3 L.P.R.A. sec. 2175. Ahora bien, en ocasiones los tribunales pueden enfrentarse a controversias que no siempre son tajantemente de "hecho" o de "derecho". En estos casos, como bien señala el Prof. Demetrio Fernández Quiñones, "[p]ara que la concepción interpretativa de la agencia pueda prevalecer y recibir un trato deferencial, es imprescindible que se reúnan los requisitos de consistencia y razonabilidad [sic] con el propósito legislativo". D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Colombia, Ed. Forum, 1993, Sec. 9.4, pág. 549. Véase, además, *Rivera Concepción v. A.R.Pe.*, 152 D.P.R. 116, 122–124 (2000).

área. En cambio, la J.A.C.L. concluyó que el uso era viable debido a que las condiciones del solar eran óptimas para el uso solicitado, y que no se afectaría el tránsito vehicular en el área. Además, la J.A.C.L. consideró la política pública que alienta el establecimiento de centros de cuidado de niños.

## V

Nos corresponde entonces evaluar la racionalidad de la decisión de J.A.C.L., dentro del marco de deferencia *judicial* ya descrito. Un examen detenido de la decisión emitida por la J.A.C.L. revela que este organismo no hizo un análisis exhaustivo del punto neurálgico de la controversia; esto es, el efecto que tendría la concesión del permiso en la seguridad, la salud y el interés de la comunidad.

La Junta de Apelaciones fundamentó su resolución en que el Reglamento de Zonificación de Puerto Rico, Reglamento de Planificación Núm. 4 de 5 de noviembre de 2000, permite el uso solicitado "ministerialmente". Interpretó que por ello A.R.Pe. tiene el deber ministerial de aprobarlo, puesto que no tiene discreción para decidir si procede o no un uso expresamente permitido por el reglamento. Tanto la J.A.C.L. como el tribunal apelativo justificaron la existencia del "deber ministerial" aplicando la Sec. 11.02 del Reglamento de Planificación Núm. 4, *supra*, pág. 68. Esta sección permite el uso de un solar de *novecientos metros cuadrados o más* para establecer un centro de cuidado de niños. Ahora bien, las resoluciones de A.R.Pe. y de la J.A.C.L. determinaron, como cuestión de hecho, que el solar donde se propone ubicar el centro de cuidado tiene una cabida superficial de *800.01 metros cuadrados*. Por lo tanto, no está presente el supuesto fáctico fundamental para aplicar la citada Sec. 11.00, ya que ésta *requiere* que el solar que ha de evaluarse tenga una cabida mayor de 900.00 metros cuadrados de cabida superficial. En vista de

lo anterior, A.R.Pe. no tenía el deber ministerial de aprobar la solicitud para el permiso de uso, sino que dicha solicitud tenía que considerarse necesariamente según el mecanismo de excepción que contempla la Sec. 84.00 del Reglamento de Planificación Núm. 4, *supra*, pág. 289.

En *Asoc., C.D. Octubre v. J.A.C.L.*, supra, señalamos que cuando los organismos administrativos encargados de la planificación y el ordenamiento físico del país autoricen o denieguen el uso solicitado de un solar por el mecanismo de "excepción", deben tomar en consideración, entre otros, los factores siguientes: (1) la necesidad que tenga el vecindario de la actividad que se pretende establecer y si en el área ya existen actividades similares; (2) la conveniencia de la actividad para el vecindario o sector en particular, para que no resulte adverso a la salud, la moral, la seguridad y el bienestar público del vecindario; (3) la característica particular del vecindario en controversia; (4) la deseabilidad de que se concentren facilidades similares en el mismo sector; (5) el tráfico vehicular y el ruido que generará la actividad solicitada, y (6) si el carácter específico del vecindario particular debe recibir un tratamiento distinto al del sector en general. Íd., págs. 336–337.

En su resolución, la J.A.C.L. adoptó las determinaciones de hechos de A.R.Pe., pero llegó a una conclusión diametralmente opuesta al entender que el solar de referencia "provee suficiente espacio para estacionamiento y viraje". Como fundamento, la J.A.C.L. señala únicamente la necesidad de autorizar centros de cuidado de niños para atender la realidad de las familias puertorriqueñas. No consideró en su resolución que el sector específico en el que se propone este uso está compuesto por diez solares y cuenta con una sola calle sin salida con un agudo problema de tráfico vehicular. La resolución tampoco contiene un análisis de las consecuencias que tendría para el vecindario el uso solicitado ni se observa que se hayan analizado los factores desarrollados por la jurisprudencia y que de-

ben tomarse en consideración al autorizar o denegar el uso de un solar.[4] En esas circunstancias, la decisión de revocar a A.R.Pe. resulta, cuando menos, arbitraria. Reiteradamente hemos resuelto que una decisión administrativa que conceda o deniegue excepciones o variaciones acorde con los Reglamentos de Zonificación debe estar debidamente fundamentada. *López v. Junta de Planificación*, 80 D.P.R. 646 (1958).

■■■ A pesar de las amplias prerrogativas de la J.A.C.L. al revisar las actuaciones de A.R.Pe., dicha junta apelativa no puede revocar arbitrariamente las determinaciones de esa agencia y sustituirlas por las suyas. Conforme a lo explicado, A.R.Pe. es la agencia administrativa a la que se ha delegado la aplicación de los reglamentos de planificación a casos individuales y la implantación de los procesos de concesión de permisos de uso y construcción. La ley le otorga gran discreción a A.R.Pe. para aplicar los reglamentos y cumplir con sus deberes administrativos. Debe tomarse en cuenta que A.R.Pe. cuenta con los recursos profesionales y técnicos necesarios para llevar a cabo su encomienda. Por eso, aun cuando la J.A.C.L. está autorizada a llegar a sus propias conclusiones, ésta no debe rechazar caprichosamente las determinaciones de la agencia apelada. Permitir la actuación irrazonable de los organismos apelativos interagenciales provocaría la ineficacia del esquema ideado por el legislador para atender las necesidades de un desarrollo y una vida urbana ordenados. Ese esquema no prevé que A.R.Pe. pase a ser un mero oficial examinador de la J.A.C.L. ni que su determinación en primera instancia sea un paso *pro forma* en camino al organismo apelativo. La consecuencia inmediata de esta con-

---

[4] La irrazonabilidad e incongruencia de la decisión de Junta de Apelaciones sobre Construcciones y Lotificaciones (J.A.C.L.) se desprende de la misma resolución: "a nuestro juicio las características de la propiedad en controversia son ideales para este uso. *Desconocemos si el centro de cuido diurno existente y perteneciente a la Sra. Tañón puede proveer estacionamiento y área de viraje.*" (Énfasis nuestro.) Resolución de la Junta de Apelaciones, pág. 5.

centración del poder decisorio en la J.A.C.L. sería una duplicidad innecesaria de los procedimientos administrativos.

Resolvemos que A.R.Pe. estaba obligada a evaluar el uso solicitado tomando en consideración las normas referentes a excepciones, junto a la combinación de factores que presenta el caso de autos y ejercer su discreción para determinar si procedía la aprobación. Fundándose en determinaciones de hechos evaluadas según los criterios que estimó pertinentes, A.R.Pe. emitió una decisión razonable al denegar la solicitud de permiso de uso. Por su parte, la J.A.C.L. actuó contrario al Reglamento al revocar la determinación de A.R.Pe. y al determinar que no procedía considerar el uso solicitado vía el mecanismo de excepciones, emitiendo su decisión de forma ministerial conforme una sección del reglamento que no era pertinente al caso de autos. La actuación de la J.A.C.L. permitió que su facultad apelativa fuese utilizada con el propósito de obviar las disposiciones reglamentarias que está obligada a implantar. Esto es contrario a la intención legislativa que motivó su creación.[5] Por lo tanto, la decisión de la J.A.C.L. fue arbitraria y contraria a derecho.

Por todo lo anterior, *procede expedir el auto para revocar las resoluciones del Tribunal de Apelaciones y de la Junta de Apelaciones sobre Construcciones y Lotificaciones, y reinstalar, por consiguiente, la resolución emitida por la Administración de Reglamentos y Permisos.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Rebollo López emitió una opi-

---

[5] Originalmente, el artículo que establecía las facultades de J.A.C.L., disponía que ésta velaría por que el ejercicio de su facultad apelativa no fuese utilizada con el propósito de obviar las disposiciones reglamentarias. Dicho lenguaje fue excluido del proyecto de ley finalmente aprobado. La eliminación de esta disposición fue recomendada por la Cámara de Representantes, pues consideraba que "la misma es innecesaria, ya que queda implícito y dentro del espíritu y la intención del proyecto el que todos los organismo públicos cumplan con esta obligación". Informe Conjunto de la Cámara de Representantes sobre el P. del S. 1074 de mayo 1975, pág. 13.

nión concurrente y disidente. El Juez Asociado Señor Fuster Berlingeri no intervino. El Juez Asociado Señor Rivera Pérez disintió de lo pautado por la mayoría a los efectos de que los procedimientos ante la Junta de Apelaciones sobre Construcciones y Lotificaciones es "de la naturaleza de un juicio *de novo*". Al igual que el Juez Asociado Señor Rebollo López, el Juez Asociado Señor Rivera Pérez entiende que se está creando una "duplicidad innecesaria" en perjuicio del interés público al convertir en innecesarios y fútiles, desde el punto de vista práctico, los procedimientos ante la Administración de Reglamentos y Permisos.

— O —

Opinión concurrente y disidente emitida por el Juez Asociado Señor Rebollo López.

Un examen de la jurisprudencia de este Tribunal revela las innumerables ocasiones en que este Foro se ha expresado a los efectos de que cuando una ley en particular resulta ser contraria a otra ley —y ambas, examinadas individualmente y por separado, son constitucionales— el Tribunal está *obligado* a *armonizar* las disposiciones de ambas leyes con el obvio propósito de llegar a un resultado correcto y justo en el caso en ese momento ante la consideración del Tribunal. *Departamento de Hacienda v. Telefónica*, 164 D.P.R. 195 (2005); *Mun. de San Juan v. Banco Gub. de Fomento*, 140 D.P.R. 873, 884 (1996); *Andino v. Fajardo Sugar Co.*, 82 D.P.R. 85, 94 (1961).

La facultad de *armonizar* leyes contradictorias es consecuencia lógica y directa del *poder inherente* que poseemos, como máximo foro judicial del país, de *interpretar* las leyes del Estado Libre Asociado de Puerto Rico —*Suárez v. C.E.E. III*, 163 D.P.R. 400 (2004); *Peña Clos v. Cartagena Ortiz*, 114 D.P.R. 576 (1983)— y del hecho, real e inescapable, de que no hay otra alternativa, ya que es la única

solución práctica y viable a nuestro alcance para resolver una situación de esta naturaleza.

Por otro lado, también hemos resuelto que, no importa la terminología que contenga una ley en particular, *estamos obligados a interpretarla de forma tal que no lleguemos a un resultado absurdo.* Dicho de otra manera, *no* podemos adherirnos, inflexiblemente, al sentido literal de la terminología de una ley si esa terminología nos lleva a un resultado que, *obviamente*, el legislador *no* pudo tener en mente ni desear, porque *resulta ilógico o absurdo.* Véase *Morell et al. v. Ojeda et al.*, 151 D.P.R. 864 (2000).

Ese, *precisamente*, es el grave error que, lamentablemente, comete la mayoría de los integrantes del Tribunal en el presente caso al *erróneamente interpretar* las disposiciones de la Ley Núm. 76 de 24 de junio de 1975 (23 L.P.R.A. sec. 71 *et seq.*), estatuto que creó tanto la Administración de Reglamentos y Permisos (A.R.Pe.) como la Junta de Apelaciones sobre Construcciones y Lotificaciones (J.A.C.L.).

I

La relación de hechos que hace la Mayoría es adecuada, razón por la cual, y con el propósito de no cansar al lector, la adoptamos. Nos dedicamos a expresar el derecho aplicable y las razones por las cuales entendemos que la opinión mayoritaria emitida es completamente errónea y perjudicial a los mejores intereses de nuestra ciudadanía y del Gobierno.

II

A.R.Pe., creada mediante la Ley Núm. 76, ante, *es la agencia con amplia discreción sobre la formulación y el mantenimiento de la política pública que se ha de seguir con relación al trámite de la concesión y denegación de per-*

*misos de uso* y la intención de proveer los remedios legales necesarios para que dicha agencia pueda velar por el cumplimiento efectivo de sus determinaciones. *Asoc. Vec. Urb. Huyke v. Bco. Santander*, 157 D.P.R. 521 (2002); *A.R.P.E. v. Ozorez Pérez*, 116 D.P.R. 816 (1986). Dicha agencia está investida con la facultad de aplicar y velar por el cumplimiento de las leyes y los reglamentos de planificación. *Asoc., C.D. Octubre v. J.A.C.L.*, 116 D.P.R. 326, (1985).

Sobre el requerimiento de permisos de uso, la Sec. 3.02 del Reglamento de Zonificación de Puerto Rico, Reglamento de Planificación Núm. 4 de 5 de noviembre de 2000, pág. 28, dispone:

> A partir de la fecha de vigencia de este Reglamento se requerirá la expedición *por la A.R.P.E.* de un permiso de construcción para toda construcción, reconstrucción, alteración, ampliación o traslado de cualquier estructura, así como un permiso de demolición *o de un permiso de uso para ocupar o usar cualquier propiedad, estructura o terrenos*. (Énfasis suplido.)

Conforme lo anterior, está dentro de las prerrogativas y *expertise* de dicha agencia la concesión o denegación de un permiso en casos en que así lo entienda correspondiente.

Por otro lado, la J.A.C.L. es un organismo administrativo, *de carácter cuasi judicial*, creado *también* al amparo de la Ley Núm. 76, ante. *Maymí v. Gob. Mun. Aut. Ponce*, 151 D.P.R. 689 (2000); *Junta de Planificación v. J.A.C.L.*, 109 D.P.R. 210 (1979).

Dispone el Art. 31(a) de la Ley Orgánica de la Administración de Reglamentos y Permisos,[1] en lo pertinente, que:

> (a) La Junta de Apelaciones tendrá facultad para entender exclusivamente en aquellos casos en que una parte directamente interesada o afectada por actuaciones, determinaciones o resoluciones de la Administración de Reglamentos y Permisos en relación con: permisos de construcción y de uso de edi-

---

[1] 23 L.P.R.A. sec. 72c(a).

ficios, permiso de uso de solares, para áreas de estacionamiento; casos y planos de lotificación simple; planos de lotificación; casos donde se solicite la dispensa del cumplimiento de requisitos de un Reglamento de Planificación mediante una concesión o autorización directa.

El referido organismo cuenta con jurisdicción apelativa, limitada a revisar actuaciones o determinaciones de A.R.Pe. relacionadas con permisos de construcción, uso y lotificaciones simples, entre otros. *Maymí v. Gob. Mun. Aut. Ponce*, ante; *Junta de Planificación v. J.A.C.L.*, ante. Como vemos, el aludido Art. 30 dispone la revisión interagencial de las determinaciones de A.R.Pe., previo al trámite de revisión judicial.

Dispone el inciso (c) del Art. 31 (23 L.P.R.A. sec. 72c(c)) que la J.A.C.L. *celebrará una vista*, con notificación previa a la Junta de Planificación, a A.R.Pe. y a las partes interesadas o afectadas, *en la cual podrá recibir toda la prueba que resulte necesaria para adjudicar casos* y deberá dictar su resolución dentro de los treinta días siguientes a dicha vista.

Este inciso establece, además, que

[l]a Junta de Apelaciones podrá decretar a nivel apelativo cualquier orden, requerimiento, resolución o determinación que a su juicio deba dictarse:

(1) Por motivo de perjuicios ocasionados por circunstancias especiales o extraordinarias cuando la actuación o resolución de la cual se apela resulta en una prohibición o restricción irrazonable del derecho del apelante al uso y disfrute de su propiedad;

(2) *por denegaciones viciosas para emitir los permisos necesarios*, o

(3) por cualesquiera otras razones autorizadas en los reglamentos de la Junta de Planificación de Puerto Rico y de la Administración de Reglamentos y Permisos adoptados o aprobados a virtud de las secs. 62 a 63j de este título, este capítulo o cualquiera ley, y, a tal fin, la Junta de Apelaciones tendrá los mismos poderes del funcionario u organismo de cuya actuación se apela, remitiendo copia de su determinación a la Junta de Planificación y a la Administración de Reglamentos y Permisos. (Énfasis suplido.)

Se desprende de lo anterior que, al realizar su función revisora y hacer cualquier determinación, la J.A.C.L. tomará en consideración si la actuación de la agencia a quien está revisando resultó en una restricción irrazonable del derecho del apelante al uso de su propiedad. En específico, al revisar la denegatoria de A.R.Pe. a conceder un permiso, la J.A.C.L. tendrá que analizar si dicha denegatoria fue correcta o, por el contrario, arbitraria.

Resulta necesario enfatizar que en nuestras decisiones previas, aun cuando, ciertamente, hemos reconocido la facultad revisora de la J.A.C.L.,[2] realmente no hemos elaborado una doctrina sobre el alcance del poder o de la facultad de revisión que tiene la J.A.C.L. respecto a las decisiones emitidas por A.R.Pe.

## III

La Mayoría, ante la *comprensible dificultad* a la cual se enfrenta —de intentar explicar lo inexplicable; esto es, tratar de explicar, en forma "satisfactoria", su errónea posición— incurre en una serie de *contradicciones* que, realmente llaman la atención. Meramente a manera de ejemplo, tenemos que, a través de su ponencia, la Mayoría expresa que: (1) A.R.Pe. es la "agencia que debe aplicar a casos individuales los reglamentos de la Junta de Planificación y está a cargo del proceso de concesión de permisos de uso y construcción" (opinión mayoritara, pág. 695); (2) la citada Ley Núm. 76 "le otorga *gran discreción* a A.R.Pe. para aplicar los reglamentos y cumplir con sus deberes administrativos" ((énfasis suplido) íd., pág. 702); que debe "tomarse en cuenta que A.R.Pe. *cuenta con los recursos profesionales y técnicos necesarios* para llevar a cabo su encomienda" (énfasis suplido) íd.; que el *esquema* ideado por el legislador, por medio de la citada Ley Núm. 76, "*no*

---

[2] Véanse: *Junta de Planificación v. J.A.C.L.*, 109 D.P.R. 210 (1979); *Rivera Concepción v. A.R.Pe.*, 152 D.P.R. 116 (2000).

prevé que A.R.Pe. pase a ser un mero oficial examinador de la J.A.C.L. ni que [la] determinación [de A.R.Pe.] en primera instancia sea un paso *pro forma* en camino al organismo apelativo" (íd.), esto es, ante la J.A.C.L.; que la "consecuencia inmediata de esta concentración del poder decisorio en la J.A.C.L. sería una *duplicidad innecesaria* de los procedimientos administrativos" ((énfasis suplido) íd., págs. 702–703); que la J.A.C.L. —"organismo administrativo de carácter cuasi-judicial"— *"no* puede revocar *arbitrariamente* las determinaciones de [A.R.Pe.] y sustituirlas por las suyas" ((énfasis suplido) íd., pág. 702), y que, "aun cuando la J.A.C.L. está autorizada a llegar a sus propias conclusiones, ésta *no* debe rechazar *caprichosamente* las determinaciones de" A.R.Pe. (Énfasis suplido.) íd.

De una lectura de las anteriores expresiones de la Mayoría se puede, lógica y razonablemente, concluir que ésta entiende que la J.A.C.L. debe actuar con *deferencia* hacia las determinaciones de hechos y decisiones que emita A.R.Pe. Ello no obstante, *e incurriendo en una patente contradicción*, a renglón seguido la Mayoría nos "ilustra" con expresiones tales como: que el hecho de que "la J.A.C.L. sea una agencia de carácter cuasi judicial, *no* implica que esté obligada a darle deferencia a las determinaciones de hechos y conclusiones de A.R.Pe.", y que "el esquema administrativo adoptado en 1976 ... *por las razones que fueran*, refleja la intención legislativa *de dar a la J.A.C.L. una función más amplia* que la de un tribunal revisor". (Énfasis suplido.) Opinión mayoritaria, pág. 698.

*¿En qué quedamos?* ¿Debe la J.A.C.L. conceder deferencia a las determinaciones y decisiones que haga y emita A.R.Pe. en un caso en particular o no debe hacerlo? ¿A las determinaciones de qué agencia administrativa —A.R.Pe. o la J.A.C.L.— es que el foro judicial está obligado a darle deferencia: a las de esta *super agencia* creada por la Mayoría en el presente caso, que tiene —"por las razones que fueran", conforme expresa la Mayoría— "una función más

amplia que la de un tribunal revisor", o a A.R.Pe., que es la agencia que cuenta con el personal especializado y el *expertise* (o conocimiento técnico) en esta clase de situaciones? Opinión mayoritaria, pág. 698.

Finalmente, la Mayoría —tal y como si hubiera descubierto a América— sentencia que, dentro del esquema que establece la citada Ley Núm. 76, "la J.A.C.L. está facultada en ley para formular sus propias determinaciones, e incluso llegar a conclusiones distintas a las de [A.R.Pe.]". Opinión mayoritaria, pág. 694.

*No* tenemos, realmente, objeción a esta última determinación mayoritaria. De hecho, *no* la podemos tener puesto que *cualquier institución revisora* —sea judicial o administrativa— puede actuar así al resolver un asunto que es traído ante su consideración. A lo que *sí* tenemos objeción es a la determinación de que, en el ejercicio de la función que le concede la citada Ley Núm. 76, *la J.A.C.L. no le debe deferencia alguna a la decisión que emita A.R.Pe. en un caso en particular.* Debe mantenerse presente que, en esta clase de asuntos, A.R.Pe. es el organismo con conocimiento especializado en la materia; además, cuenta con el apoyo técnico requerido para resolver las controversias complejas que surgen en esta clase de casos. *Sus determinaciones y decisiones, ciertamente, merecen deferencia.*

Determinar que por el *mero hecho* de que la Ley Núm. 76, ante, establece que la J.A.C.L. podrá celebrar una vista en la cual podrá "recibir *'toda la prueba* que resulte necesaria'" para adjudicar el caso, ello significa que el procedimiento ante la J.A.C.L. es "de la naturaleza *de un juicio de novo*", es —por qué no decirlo— un error inconmensurable. (Énfasis suplido y en el original.) Opinión mayoritaria, pág. 697.

Se está creando, equivocadamente, *una "duplicidad innecesaria" en perjuicio del interés público*; ello en vista de que el Tribunal establece un esquema cuya consecuencia es el gasto innecesario de fondos públicos y de esfuerzo. Por

otro lado, ello *igualmente perjudica* a las partes, las cuales estarán obligadas a comparecer a dos procedimientos, *separados totalmente el uno del otro*, con el consabido gasto y la pérdida de tiempo adicional. *El establecimiento de estos dos procedimientos —totalmente separados el uno del otro— es un resultado absurdo que nunca pudo ser previsto por el legislador y que estamos obligados a evitar.* La opinión mayoritaria emitida ha convertido, *a todos los efectos prácticos*, los procedimientos ante A.R.Pe. en unos procedimientos totalmente innecesarios y fútiles, a los cuales las partes, incluso, no le prestarán atención ni le darán importancia alguna. *No podemos suscribir tal posición; disentimos.*

Creemos que nuestro deber, ante esta situación, es *armonizar* las disposiciones de la citada Ley Núm. 76 *mediante el establecimiento de un esquema que complemente los procedimientos ante A.R.Pe. y la J.A.C.L., a saber*: apelada una decisión de A.R.Pe. ante la J.A.C.L., ésta deberá señalar una *vista* en la cual las partes podrán presentar *prueba adicional* a la presentada por ellos ante A.R.Pe. Terminada esa etapa, la J.A.C.L. deberá decidir: (1) en el ejercicio de la *deferencia* que merecen las determinaciones de hechos de una agencia especializada, si las determinaciones de hechos realizadas por A.R.Pe. encuentran *apoyo sustancial* en la prueba que se presentara ante dicho organismo, y (2) si la *prueba adicional*, presentada por las partes en la *vista* celebrada ante la J.A.C.L., *amerita o no una decisión distinta a la emitida por A.R.Pe. en el caso.*

Este curso decisorio, a nuestro juicio, *armoniza* las disposiciones de la Ley Núm. 76, ante, evitando el resultado absurdo al que llega la Mayoría en el caso hoy ante nuestra consideración.

# IV

En este caso, aun cuando, ciertamente, el uso solicitado por Vélez Rodríguez está permitido por la reglamentación vigente,([3]) A.R.Pe. tenía *amplia discreción*, en virtud de las facultades concedidas por la Ley Núm. 76, ante —*la cual le otorga a A.R.Pe. la facultad para decidir sobre solicitudes de permisos de uso y construcciones*— para determinar si autorizaba o no el permiso de uso solicitado por Vélez Rodríguez. Previo a denegar el permiso, A.R.Pe. *aquilató* toda la prueba presentada por las partes en la vista administrativa *y tomó en consideración y evaluó*, entre otras cosas, los requisitos y las características del distrito donde quedaría localizado el centro de cuido, las actividades comerciales del sector y el impacto en el bienestar y la salud en el área. Esta determinación se hizo *tomando en cuenta* los negocios que ya operan allí, en específico el centro de cuido ya existente, y la ubicación de la propiedad de la proponente dentro de la calle, en donde viven varias familias y que, además, es una calle sin salida, por lo cual sólo hay una entrada para los residentes y para los clientes y visitantes de los negocios que allí se encuentran.

Fundándose en sus determinaciones de hecho, y a base de su *expertise*, A.R.Pe. concluyó que el uso solicitado *no era viable*, ya que se afectaría adversamente la calidad de vida de los vecinos debido al aumento en el tráfico vehicular que se ocasionaría en una zona que ya presentaba problemas de tráfico. *Dicha conclusión fue razonable, por lo cual la denegación del permiso no fue una arbitraria.*

En revisión de la anterior conclusión, la J.C.L.A., tomando en consideración *la misma prueba* presentada en la vista celebrada ante A.R.Pe., *descartó* sus determinaciones y concluyó, a su vez, que las condiciones de la vivienda de

---

([3]) En específico, por la antes citada Sec. 11.02 del Reglamento de Zonificación de Puerto Rico, Reglamento de Planificación Núm. 4 de 5 de noviembre de 2000.

la proponente eran óptimas para la operación de un centro de cuido y que el flujo vehicular no se afectaría. La J.A.C.L., al rechazar la conclusión de A.R.Pe. sin analizar su razonabilidad, ciertamente sustituyó el criterio de esta agencia por el suyo. *Su proceder fue erróneo*, sobre todo cuando consideramos que las partes *no* presentaron prueba adicional alguna en la vista ante la referida Junta.

Aun cuando, en efecto, la J.A.C.L. puede recibir prueba adicional para tomar una decisión, ello no implica que pueda hacer abstracción de los hechos adjudicados por A.R.Pe. y de sus conclusiones, siempre y cuando los primeros encuentren apoyo en la evidencia que obre en el expediente y las segundas no sean arbitrarias, irrazonables o caprichosas. En fin, nos enfrentamos a una situación en que la J.A.C.L. —*organismo cuasi judicial*— ha abusado de su discreción. La determinación de la J.A.C.L. no fue razonable. Erró el foro apelativo al negarse a expedir el auto.

Por los fundamentos anteriormente expuestos, somos del criterio que procede la revocación de la actuación del Tribunal de Apelaciones en este caso.