Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **MARIA DE LOS ANGELES COLLAZO CARRASQUILLO**<br><br>Recurrente<br><br><br>v.<br><br><br>**NEGOCIADO DE SEGURIDAD DE EMPLEO (NSE)**<br><br>Recurrido | KLRA202300565 | ***Revisión Administrativa***<br>Procedente del Departamento del Trabajo y Recursos Humanos<br><br>**PUA-06283-23 Recl. Núm. A00-000-0972-4154**<br><br>Sobre: Inelegibilidad a los beneficios del "Pandemic Unemployment Assistance" (PUA), "Coronavirus Aid, Relief, and Economic Security Act", Ley Pública 116-16 (CARES) del 27 de 2020 |

Panel integrado por su presidenta, la juez Domínguez Irizarry, la juez Grana Martínez y el juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 22 de enero de 2024.

Comparece ante nos, María de los Ángeles Collazo Carrasquillo, en adelante, Collazo Carrasquillo o recurrente, solicitando que revisemos la determinación del Negociado de Seguro por Desempleo, en adelante, NSE, del 6 de julio de 2023. En la decisión recurrida, la NSE determinó que Collazo Carrasquillo era elegible para los beneficios del Pandemic Unemployment Assistance, en adelante, PUA, para las semanas del 21 de marzo de 2020 al 27 de junio de 2020, y no *hasta el 27 de julio de 2020*.

Por entender que es acreedora del PUA por las semanas del 21 de marzo de 2020 *al 27 de julio de 2020*, Collazo Carrasquillo solicita que revisemos y modifiquemos la decisión recurrida.

Número Identificador

RES2024_____

**I.**

Collazo Carrasquillo alega que solicitó los beneficios compensatorios del PUA por internet. Según esta, el sistema le indicó que no era elegible, por no cumplir con los requisitos. Indicó que por esto solicitó una revisión ante la División de Apelaciones del Departamento, en adelante, División, sobre la determinación de inelegibilidad. Además, expresó haber enviado la documentación pertinente vía correo electrónico y correo certificado.

La recurrente nos expone en su recurso que el 13 de junio de 2023 recibió una llamada del Departamento del Trabajo y Recursos Humanos, en adelante, Departamento, en donde le indicaron que la documentación para su solicitud del PUA estaba *incompleta*. Según ella, durante la conversación telefónica se le preguntó en qué momento comenzó a laborar, a lo que confesó no poder contestar porque *no tenía el documento con la fecha exacta*. Sin embargo, nos indica que calculó ese tiempo entre los meses de julio a agosto del 2020. Según Collazo Carrasquillo, esta procedió a enviar la documentación que le requirieron directamente al correo electrónico de la representante del Departamento que la atendió.

Posteriormente, el 6 de julio de 2023, Collazo Carrasquillo recibió notificación de la *"Resolución"* de la División,[1] en la que se modificó la determinación original. La División determinó que Collazo Carrasquillo era elegible para el beneficio del PUA por las semanas del 21 de marzo de 2020 a junio 27 de 2020.[2]

Sin embargo, según su exposición de los hechos en el recurso de marras, Collazo Carrasquillo apeló la resolución aludida ante la División de Apelaciones ante el Secretario, por correo electrónico y visitando físicamente las oficinas. La recurrente alegó que en su apelación le señaló al Departamento como error la determinación de

---

[1] Apéndice del recurso, pág. 1.
[2] Id. pág. 3.

inelegibilidad para las semanas posterior al 27 de junio de 2020, ya que comenzó a trabajar el 27 de julio de 2020.

El 27 de septiembre de 2023, la División de Apelaciones ante el Secretario le notificó a Collazo Carrasquillo que confirmaba la resolución apelada.[3] Es por esto que el 4 de octubre de 2023, solicitó una reconsideración ante la misma oficina.[4] Finalmente, el 12 de octubre de 2023, Collazo Carrasquillo recibió notificación del Departamento, en la que se declaró "No Ha Lugar" la reconsideración solicitada.[5]

Inconforme, la aquí recurrente presentó el recurso de autos, solicitando que esta Curia modifique la *"Resolución"* recurrida, de modo que refleje el 27 de julio de 2020 como la fecha en la que comenzó nuevamente a trabajar. En consecución a su solicitud, Collazo Carrasquillo solicita nuestra intervención, para que el Departamento le conceda los beneficios del PUA del periodo del 21 de marzo de 2020 al *27 de julio de 2020*.

El 27 de noviembre de 2023, emitimos una *"Resolución"* en la que le indicamos a la parte recurrida que presentara su posición, conforme a la Regla 63 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 63, en o antes del 29 de noviembre de 2023. En esa misma fecha, compareció el NSE con una *"Solicitud de Término"*, para que este Tribunal le concediera quince (15) días adicionales para contestar.

En una segunda *"Resolución"*, emitida el 5 de diciembre de 2023, le concedimos a la parte recurrida el término adicional solicitado, y le indicamos que presentara su posición en o antes del 19 de diciembre de 2023.

---

[3] Apéndice del recurso, pág. 5.
[4] Id. pág. 8.
[5] Id. pág. 9.

Llegado el último día del término señalado para que el NSE contestara, este presentó su *"Escrito en Cumplimiento de Resolución"*. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

### A. Negociado de Seguridad de Empleo (NSE)

La ley que crea el NSE es la Ley de Seguridad de Empleo de Puerto Rico, en adelante, Ley de Seguridad de Empleo, Ley Núm. 74 del 21 de junio de 1956, 29 LPRA sec. 701 et seq.  Según lo establece la Sección 1 de la Ley de Seguridad de Empleo, supra, 24 LPRA sec. 701, el NSE fue creado con la intención de "promover la seguridad de empleo facilitando las oportunidades de trabajo por medio del mantenimiento de un sistema de oficinas públicas de empleo y proveer para el pago de compensación a personas desempleadas por medio de la acumulación de reservas".

A estos fines, la Ley de Seguridad de Empleo estableció un fondo de desempleo, separado de aquellos fondos pecuniarios pertenecientes al Gobierno de Puerto Rico. Este fondo especial es sufragado por las contribuciones de los patronos, y está regulado por los parámetros establecidos en la propia Ley de Seguridad de Empleo, supra, 26 LPRA sec. 710. Estos fondos, provenientes de los patronos, son administrados por el Secretario del Trabajo y Recursos Humanos, quien viene obligado a interpretar el mismo conforme la ley que lo crea. De sus funciones administrativas ante este fondo especial, la más importante subyace en la protección contra la inseguridad económica y el riesgo del desempleo.

### B. Pandemic Unemployment Assistance (PUA)

El Coronavirus Aid, Relief, and Economic Security Act, en Adelante, CARES Act, es una legislación económica federal, creada en respuesta a la emergencia causada por el COVID-19. 15 USCA sec. 9001 et seq. Esta legislación buscó mitigar el impacto

económico que la pandemia ejerció sobre los empleados, familias y comercios.

En su sección 9021, el CARES Act, supra, crea el PUA. Este programa federal fue hecho para proveer asistencia económica a personas desempleadas y afectadas por la situación pandémica, pero que no cualificaban para los beneficios de desempleo estatales. CARES Act, supra, sec. 2102(b). De entre las personas que cualificaban para el PUA se encontraban los contratistas independientes y dueños de pequeños negocios, si la fuente principal de ingresos provenía de dicho negocio. CARES Act, supra, sec. 9021 (a)(3)(A)(ii)(ll).

Si el solicitante cualificaba, se le otorgaba una compensación monetaria por las semanas que estuvo desempleado a causa de la emergencia del COVID-19. CARES Act, supra, sec. 2102(b).

Para solicitar los beneficios del PUA, los interesados debían someter la documentación pertinente para probar la cantidad de semanas que estuvieron desempleadas o afectadas laboralmente por la pandemia. De la documentación necesaria para esto, se requerían: 1) las Planillas de Contribución sobre Ingresos; 2) copias de talonarios de pago recientes; 3) recibos de banco mostrando depósitos; 4) notificaciones de facturas enviadas a clientes; 5) anuncios recientes de su negocio o servicios; 6) licencia de negocio vigente; 7) libros de cuentas; 8) contratos; 9) facturas; o 10) contrato de arrendamiento de local.[6]

**C. Deferencia Judicial**

Es norma reiterada que los tribunales apelativos han de conceder una gran deferencia a las decisiones de los organismos administrativos, por razón de la ***experiencia y pericia*** de las

---

[6] Información adquirida en la sección de "Preguntas Frecuentes sobre Asistencia de Desempleo Pandémico (PUA)" en la página web oficial del Departamento del Trabajo y Recursos Humanos. https://www.trabajo.pr.gov/puafaqs.asp

agencias respecto a las facultades que se les han delegado. *Hernández Feliciano v. Municipio de Quebradillas,* 2023 TSPR 6, 211 DPR ___ (2023); *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018); *Sánchez et al. v. Depto. Vivienda et al.,* 184 DPR 95, 119-122 (2011); *Mun. de San Juan* v. *Plaza Las Américas,* 169 DPR 310, 323 (2006); *Hernández Álvarez* v. *Centro Unido,* 168 DPR 592, 614 (2006).

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante LPAUG, dispone el alcance de la revisión judicial de las determinaciones de las agencias. Ley Núm. 38 de 30 de junio de 2017, 3 LPRA sec. 9675. Tanto la referida ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley, y si la misma es legal y razonable. *Hernández Álvarez* v. *Centro Unido, supra,* pág. 616; *T–JAC* v. *Caguas Centrum,* 148 DPR 70, 80 (1999).

Por lo tanto, los tribunales deben ser cautelosos al intervenir con las decisiones administrativas. *Empresas Loyola v. Com. Ciudadanos,* 186 DPR 1033, 1041 (2012).

Nuestro más Alto Foro ha establecido que las decisiones de las agencias administrativas tienen una ***presunción de regularidad y corrección***, haciendo necesario que aquel que desee impugnar dichas decisiones, presente evidencia suficiente que derrote la misma, y no descanse en meras alegaciones. *García* v. *Cruz Auto Corp.,* 173 DPR 870, 892 (2008); *Vélez* v. *ARPE,* 167 DPR 684, 693 (2006). Conforme lo ha interpretado nuestro Tribunal Supremo, la revisión judicial de este tipo de decisiones se debe limitar a determinar si la actuación de la agencia es *arbitraria, ilegal,*

o tan *irrazonable* que la misma constituye un abuso de discreción. *Rebollo v. Yiyi Motors*, 161 DPR 69, 76 (2004). (Énfasis nuestro).

Adicional a la presunción de corrección de la que gozan las decisiones administrativas, el Tribunal Supremo de Puerto Rico recientemente se expresó a favor de la deferencia administrativa, aun cuando "**la interpretación** que hace la agencia **es razonable, aunque no sea la única razonable"**. *W.M.M. v. Puerto Rican Christian School, Inc.*, 2023 TSPR 48, 211 DPR ___ (2023).

**III.**

La parte recurrente en el caso de marras solicitó, mediante el Departamento, los beneficios del PUA. Sin embargo, estos le fueron denegados por el NSE. En un proceso de revisión, sometió la documentación pertinente, y tuvo una audiencia ante el NSE mediante llamada telefónica. A raíz de esta gestión, la decisión de la oficina administrativa en cuestión fue modificada, de modo que se le concedieron los beneficios del PUA por las semanas del 21 de marzo de 2020 al 27 de junio de 2020.

La recurrente apeló, y posteriormente solicitó que se reconsiderara, infructuosamente, la denegación de beneficios por el PUA para el mes de julio de 2020. Collazo Carrasquillo indica que en la audiencia telefónica no pudo confirmarle al Departamento que había comenzado a trabajar el 27 de julio de 2020, y que esto no fue su culpa. Añadió que, por esto último, la referida agencia no debió negarle los beneficios del PUA para el mes de julio de 2020. Indica la recurrente que posterior a la audiencia telefónica, le sometió al Departamento la documentación que prueba que, en efecto, estuvo desempleada hasta el 27 de julio de 2020. Además, señala que la División se equivocó al haber confirmado la determinación del NSE. Entendemos que, a la recurrente, *no le asiste razón.*

En el primer proceso de revisión en el Departamento, el NSE, en su *"Resolución"*, determinó que la recurrente "*informó* [que]

comenzó a trabajar y generar ingresos en julio de 2020". Por ello, solo concedió los beneficios del PUA hasta el mes de junio de 2020, y la declaró inelegible para los meses posteriores. Entendemos, pues, que el NSE no consideró debidamente probada la alegación de la recurrente, con relación a haber empezado a trabajar a finales de julio de 2020.

Más aún, en los otros dos procedimientos apelativos ante la División del Departamento, se confirmó la determinación revisora original del 6 de julio de 2023. En la decisión apelativa del 26 de septiembre de 2023, el Departamento indica que en la audiencia que tuvo Collazo Carrasquillo, esta expresó que comenzó a trabajar para los meses de julio o agosto, sin haber especificado día.

Posteriormente, en el proceso de reconsideración, la recurrente vuelve a indicar que haberla declarado inelegible para el mes de julio de 2020 es un error, ya que ella les ofreció la documentación pertinente posterior a la audiencia telefónica que tuvo con el Departamento. A esto último, en su determinación en reconsideración, el Departamento indicó que la recurrente "tenía la obligación de estar preparada para la vista", por lo que declaró "No Ha Lugar" la misma.

Además, es importante destacar que del expediente no surge el documento, cuya naturaleza desconocemos, que alegadamente fue presentado por Collazo Carrasquillo. Es decir, la recurrente no ha puesto a esta Curia en posición de evaluar si el alegado documento que justifica la concesión de beneficios por el PUA para el mes de julio de 2020 es suficiente para revocar la decisión recurrida.

Sin embargo, entendemos que aún si la recurrente presentó documentación apropiada y suficiente para evidenciar el comienzo de sus labores en julio de 2020, lo hizo en destiempo.

En vista de que la actuación de la agencia fue dictada dentro de las facultades conferida por ley, y la misma fue legal y razonable, nos vemos precisados a confirmar la decisión que nos ocupa.

**IV.**

Por los fundamentos antes expuestos, *se confirma la resolución recurrida.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana Martínez concurre sin opinión escrita.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones