ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| LISSETTE VEGA MEDINA<br><br>RECURRIDA<br><br>DEPARTAMENTO DE ASUNTOS AL CONSUMIDOR (DACO) AGENCIA<br><br><br>V.<br><br><br>THREE BROTHERS AUTO, CORP.<br><br>RECURRENTE | KLRA202400194 | *REVISIÓN JUDICIAL* procedente del Gobierno de Puerto Rico; Departamento de Asuntos del Consumidor, Oficina Regional de Mayagüez<br><br>_____<br><br>Querella Núm.: MAY-2022-0003393<br><br>SOBRE: Compraventa de Vehículo de Motor |

Panel integrado por su presidente el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro.

Salgado Schwarz, Carlos G., Juez Ponente.

# S E N T E N C I A

En San Juan, Puerto Rico, a 21 de agosto de 2024.

Comparece Three Brothers Auto, Corp. (en adelante, "Three Brothers Auto" o "recurrente") mediante auto de *Revisión Judicial* en el cual nos solicita la revisión de la *Resolución* emitida, el 16 de febrero de 2024, y notificada, el 20 de febrero de 2024, por el Departamento de Asuntos al Consumidor (en adelante, "DACO"). En el referido dictamen, DACO declaró *Ha Lugar* la *Querella* presentada y, a esos efectos, ordenó tanto la resolución del contrato de compraventa como la devolución de $6,675.00 a favor de la señora Lissette Vega Medina (en adelante, "señora Vega" o "recurrida").

Por los fundamentos que expondremos a continuación, se **confirma** la *Resolución* recurrida.

**I.**

El 16 de diciembre de 2022, la señora Vega presentó una *Querella*[1] ante el DACO mediante la cual solicitó la cancelación de la compraventa de un vehículo de motor y la devolución total del dinero pagado. Además, solicitó el pago ascendiente a $375.00 por los gastos incurrido en grúa y el estimado del mecánico de su confianza. Asimismo, la señora Vega hizo constar los siguientes hechos:

> El sabado [sic] 10 de diciembre 2022 me persone al Deler [sic] Three Brothers Auto Corp. para la compra del vehiculo [sic] Nissan fontier 2005 color Blanca. Ese día se le dio el valor asignado por el de leer [sic] de $6,500 dolares. La guagua fue conducida a mi hogar en Aguadilla un viaje de 20 min. Se estaciono [sic] y el lunes 12 de diciembre se utilizo [sic] el vehiculo [sic] para ir a Barceloneta y por el camino llegando a Barceloneta la guagua empezó hacer un ruido rapido [sic] se movio [sic] al despaceo [sic] y la guagua se apago sola. Se le verifico [sic] el agua y el Aceite y mostro [sic] el aceite con agua. Se trajo en grua [sic] al hogar y un mecanico [sic] certificado la verifico [sic] y nos hizo saber que el motor se habia [sic] trancado.[2]

El 26 de mayo de 2024, DACO realizó una inspección del auto marca Nissan, modelo Frontier del año 2005, aquí en controversia.[3] A esos efectos, el 30 de junio de 2024, el técnico automotriz de DACO emitió un *Informe de Inspección Vehículo de Motor*[4], el cual fue notificado a las partes el 5 de junio de 2024. Mediante dicho informe, se encontraron los siguientes hallazgos:

> Al momento de la inspección la unidad presentaba batería agotada. La querellante procedió a remplazar la batería por la de otro vehículo. Se remplazo la batería, pero el motor aparentaba estar trancado porque no giraba cuando se trataba de encender. Querellado trajo un mecánico para ayudar a diagnosticar la unidad. El mecánico del querellado le instalo un equipo de presión de agua para saber si había algún liqueo de agua. La unidad no presentó liqueo de agua, pero el equipo de presión de agua disminuyo la presión poco a poco. Este funcionario decidió chequear la varilla de aceite de motor para verificar si el agua se estaba colando por el motor

---

[1] Apéndice del Recurso de la parte recurrida, Anejo I, págs. 1-6.
[2] *Íd.*, pág. 5.
[3] Apéndice del Recurso de la parte recurrida, Anejo VII, págs. 14-15.
[4] Apéndice del Recurso de la parte recurrida, Anejo VIII, págs. 16-21.

internamente. La varilla de aceite estaba marcando por encima del nivel indicado.

Este funcionario le solicito al querellante una sabana o cartón para poder chequear la unidad por debajo y poder soltar el tapón de aceite del motor. Al soltar el tapón de aceite de motor este funcionario le comunico al mecánico que el querellado trajo que estuviera pendiente para que el pudiera ver que salía por el tapón. Cuando se aflojo el tapón de aceite del motor, empezó a botar agua, lo que indica que toda el agua se echó en el radiador, se estaba filtrando por el interior del bloque de motor.[5]

En consecuencia, el técnico automotriz de DACO fundamento su opinión pericial en que:

El motor trancado se debe a que los pitones se llenaron de agua y el motor no puede girar debido a la presión que el agua ejerce contra los pistones. Se recomienda la reparación del motor o el remplazo del mismo.[6]

Tras la celebración de la vista administrativa, el DACO emitió *Resolución*[7] el 16 de febrero de 2024 y notificó el 20 de febrero de 2024, en la cual declaró *Ha Lugar* la *Querella* presentada. Además, ordenó tanto la resolución del contrato de compraventa como la devolución de $6,675.00 a favor de la señora Vega. El DACO concluyó lo siguiente:

De la prueba surge que dicho auto presentaba un vicio preexistente a la venta, un vicio oculto que impide el uso y disfrute el auto para el uso destinado. Ninguna de las razones que señaló el Técnico de DACO de posibles causas de sobrecalentamiento es imputable a la parte querellante, por el contrario, están ligadas a como el auto fue entregado a la parte querellante. […] La parte querellada tenía la obligación de poner el auto en optimas condiciones antes de la venta del mismo, era responsabilidad del querellado verificar los abanicos, las mangas y el closter.[8]

En desacuerdo, el 6 de marzo de 2024, Three Brothers Auto presentó una *Reconsideración*.[9] En síntesis, alegó que el expediente no contenía prueba que sostuviera la adjudicación administrativa. Además, sostuvo que el único causante de que se trancara el motor del vehículo era el hijo de la señora Vega, quien había conducido hasta Barceloneta.

---

[5] *Íd.*, pág. 19.
[6] *Íd.*
[7] Apéndice del Recurso de la parte recurrida, Anejo IX, págs. 22-31
[8] *Íd.*, pág. 28.
[9] Apéndice del Recurso de la parte recurrente, Anejo I, págs. 1-10.

Trascurrido el término para que DACO considerara la *Reconsideración*, Three Brothers Auto presentó el recurso que nos ocupa y señala la comisión del siguiente error:

> Erró el DACO al concluir que se ordene la resolución del contrato del vehículo de motor en controversia y la devolución de las contraprestaciones, aun cuando surge prueba sustancial, inequívoca e incontrovertible en el expediente administrativo que fundamenta que la parte querellada NO tiene derecho a lo solicitado por que fue por su propia actuación que el motor del vehículo en cuestión se "tranco", ya que vehículo no tenía ningún vicio.

Por su parte, el 31 de julio de 2024, la señora Vega presento su alegato en oposición.

Con el beneficio de los escritos de las partes y la transcripción de la vista adjudicativa, damos el recurso por perfeccionados y procedemos a resolverlo.

**II.**

**A. Revisión judicial**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (en adelante, "LPAU"), establece el marco de revisión judicial de las decisiones, órdenes y resoluciones finales de organismo agencias administrativas.[10] Cónsono con lo anterior, nuestra función revisora se delimita a delinear la discreción de las entidades administrativas para garantizar que sus decisiones se encuentren en el marco de los poderes delegados y sean consecuentes con la política pública que las origina[11].

Debido a la vasta experiencia y conocimiento especializado que tienen las agencias administrativas sobre los asuntos que le son encomendados, los foros revisores les conceden gran consideración y deferencia a sus decisiones[12]. Es por esta razón, que la revisión judicial se limita a

---

[10] Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675.
[11] *Cruz Rivera v. Mun. de Guaynabo*, 205 DPR 606 (2020); *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016).
[12] *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006).

determinar si la agencia actuó de manera arbitraria o ilegal, o de forma tan irrazonable que sea considerado un abuso de discreción[13]. Hay que señalar que las determinaciones de los organismos administrativos están cobijadas por una presunción de corrección y legalidad que debe respetarse, mientras la parte que las impugne no demuestre con suficiente evidencia que la decisión no está justificada[14].

Así pues, la revisión judicial de una decisión administrativa se circunscribe a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si ésta actuó de forma arbitraria, caprichosa o ilegal[15]. El criterio rector es la razonabilidad de la actuación de la agencia recurrida[16]. Por ello, al momento de evaluar una determinación administrativa se debe considerar si: (1) el remedio concedido por la agencia fue apropiado; (2) la decisión de la agencia está sostenida en evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y (3) las conclusiones de derecho fueron correctas[17].

**B. Vicios ocultos**

En lo concerniente al contrato de compraventa, el Código Civil de Puerto Rico de 2020 (en adelante, "Código Civil") establece la obligación de saneamiento por evicción o vicios ocultos. Específicamente, el Artículo 1261 del Código Civil establece que "[l]a persona que transmite un bien a título oneroso responde por evicción y por los defectos ocultos del bien, aunque lo ignorase".[18]

---

[13] *López Borges v. Adm. Corrección*, 185 DPR 603 (2012); *Federation des Ind. v. Ebel*, 172 DPR 615, 648 (2007).
[14] *López Borges v. Adm. Corrección, supra.*
[15] *Vélez v. ARPE*, 167 DPR 684 (2006).
[16] *Hernández, Álvarez v. Centro Unido*, 168 DPR 592 (2006).
[17] *Rolón Martínez v. Superintendente*, 201 DPR 26, 35-36 (2018); *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012).
[18] 31 LPRA sec. 9851.

Por otro lado, el Artículo 1263 del mismo Código dispone que el adquirente puede optar por reclamar la subsanación o reparación de los defectos, la entrega de un bien equivalente o resolver total o parcialmente el contrato.[19] No obstante, dicho artículo dispone que la resolución total solo procederá si la evicción o el defecto recaen sobre un aspecto determinante para la adquisición del bien.[20] Particularmente, en caso de vicio redhibitorio, el adquirente solo tendrá derecho al resarcimiento de los daños sufridos si el transmitente actuó con dolo.[21] En especial, el Código Civil en su Artículo 1267 define el vicio redhibitorio como:

> [E]l defecto oculto en el bien transmitido a título oneroso, existente al tiempo de la adquisición, que hace impropio al bien para su destino o disminuye de tal modo su utilidad que, de haberlo conocido, el adquirente no lo habría adquirido o habría dado menos por él.[22]

Además, el referido artículo establece que el transmitente responde aun cuando ignore la existencia del vicio redhibitorio.[23]

Asimismo, el Artículo 1268 del Código Civil dispone que no es vicio redhibitorio el que el adquirente conoce al momento de la transmisión o el que pudo haber conocido conforme a sus aptitudes.[24] Para juzgar la aptitud del adquirente, el citado artículo dispone que debe atenderse el deber que tiene de obrar con prudencia y pleno conocimiento de las circunstancias.[25]

En cuanto al peso de la prueba sobre la existencia de vicios ocultos en la compraventa de vehículos de motor, nuestro Alto Foro ha opinado que "el comprador de un vehículo de motor —sea éste nuevo o usado— al reclamar por vicios

---

[19] 31 LPRA sec. 9853.
[20] *Íd.*
[21] 31 LPRA sec. 9853.
[22] 31 LPRA sec. 9871.
[23] *Íd.*
[24] 31 LPRA sec. 9872.
[25] *Íd.*

ocultos, sólo estará obligado a demostrar que el automóvil funcionaba normalmente al momento de la compra y que el vendedor no quiso o no pudo corregir el defecto, a pesar de haber tenido la oportunidad de hacerlo".[26]

Por último, el Código Civil establece que las acciones para reclamar por vicios redhibitorios prescriben a los seis (6) meses, contados a partir de la entrega del bien transmitido, o desde la última gestión de inteligencia entre las partes.[27]

## III.

En el caso que nos ocupa, el recurrente alega que DACO incidió al resolver el contrato de compraventa de vehículo de motor y ordenar la devolución de las contraprestaciones debido a la ausencia de evidencia que sustente tal determinación. No tiene razón. Veamos.

En síntesis, explicamos en el ápice II de esta Sentencia, que procede una acción de saneamiento por vicios redhibitorios o defectos ocultos, si se cumplen los cuatro requisitos establecidos en el Código Civil.

El primer requisito es que la cosa adolezca de un vicio oculto, que no sea conocido por el adquirente al momento de la compraventa. No surge del expediente no surge que la señora Vega hubiera conocido de los vicios ocultos previo a la compraventa del vehículo ni que Three Brothers Auto le advirtiera de algún defecto en el mismo. Además, debemos reconocer que la compradora del vehículo de motor no es un perito de mecánica automotriz.

El segundo requisito es que el vicio sea de tal gravedad que haga la cosa impropia para el uso al que se destina de manera que el comprador no habría adquirido la cosa de

---

[26] *Polanco v. Cacique Motors*, 165 DPR 156, 168-169 (2005).
[27] 31 LPRA sec. 9874.

haberlo conocido. Surge del expediente que la señora Vega alega que, a los dos días de comprar el vehículo en cuestión, este se apagó mientras estaba siendo conducido. Igualmente, consta en el expediente que el Técnico Automotriz de DACO determinó que el motor del vehículo esta trancado y su recomendación era que el motor fuese reparado o reemplazado. De manera que el defecto del vehículo adquirido por la señora Vega era de tal magnitud que hacía el vehículo uno impropio para el uso que se le destinaba y disminuía su función, a un extremo que nadie en su sano juicio lo compraría de saber que el motor se tranca e impide ser conducido.

El tercer y cuarto requisito consisten en que el defecto era preexistente a la venta y que la acción sea ejercitada en el plazo legal. Recordemos que la fecha de adquisición del vehículo fue el 10 de diciembre de 2022. A los dos días, el 12 de diciembre de 2022, ocurre el incidente donde el vehículo comienza a hacer un ruido y se apaga mientras estaba siendo conducido. Three brothers Auto no presentó evidencia que derrote la conclusión de que al vender el vehículo ya adolecía del fallo que imposibilitó su uso. Apenas 2 días después de comprarlo ya el vehículo no podía ser conducido. Tanto el expediente como el testimonio de la señora Vega y el Técnico Automotriz de DACO, reflejan que el vicio existía previo a la compraventa. Por último, consta en el expediente que la reclamación fue presentada en DACO el 16 de diciembre de 2022. Es decir, a 10 días de haber adquirido el vehículo en cuestión. Por lo tanto, la *Querella* fue presentada dentro del plazo legal.

Es forzoso concluir que se satisfacen todos los requisitos de la acción redhibitoria por vicios ocultos y estos se encuentran sustentados en la evidencia del expediente. Además, en ausencia de pasión, prejuicio,

parcialidad o error manifiesto, nos abstenemos de intervenir con la apreciación de la prueba hecha por DACO.

**IV.**

Por los fundamentos antes expuestos, se **confirma** la *Resolución* recurrida.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones