ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| EMMANUEL FUENTES ENRÍQUEZ,<br><br>Recurrente,<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN,<br><br>Recurrida. | KLRA202400598 | REVISIÓN procedente del Departamento de Corrección y Rehabilitación.<br><br>Sobre: clasificación de custodia. |

Panel integrado por su presidenta, la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

Romero García, jueza ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 16 de diciembre de 2024.

La parte recurrente, Emmanuel Fuentes Enríquez (señor Fuentes), comparece por derecho propio mediante un recurso de revisión judicial. En él, solicitó que este Tribunal revoque la *Resolución* dictada el 19 de septiembre de 2024, por el Comité de Clasificación y Tratamiento (Comité de Clasificación o Comité) del Departamento de Corrección y Rehabilitación de Puerto Rico (Departamento). Mediante dicha *Resolución*, el Comité ratificó el nivel de custodia máxima del señor Fuentes. En su determinación, la agencia recurrida tomó en consideración la extensión de la sentencia condenatoria y la severidad de los delitos por los cuales fue convicto. A su vez, subrayó que la ratificación se dio en consideración a las complejidades que conlleva el proceso de rehabilitación.

El 2 de diciembre de 2024, el Departamento compareció por conducto de la Oficina del Procurador General y, en síntesis, arguyó que el Comité de Clasificación goza de discreción para aumentar el nivel de custodia que arroje la escala objetiva utilizada en el proceso de reclasificación de custodia. Ello, mediante la consideración de uno o más factores; entre estos, el historial de violencia excesiva del evaluado. A esos efectos, solicitó que este Tribunal confirmase la *Resolución* recurrida.

Número identificador

SEN2024 _____

Examinados los argumentos de las partes comparecientes, a la luz del derecho aplicable, este Tribunal confirma la *Resolución* recurrida.

I

A raíz de unos actos delictivos cometidos el 18 de julio de 2018, el señor Fuentes fue sentenciado a cumplir una pena de 158 años de cárcel, por infracción al Art. 93 del Código Penal de Puerto Rico, 33 LPRA sec. 5142, y por violaciones a los Artículos 5.04 y 5.15 de la hoy derogada *Ley de Armas de Puerto Rico*, Ley Núm. 404-2000, 25 LPRA secs. 458c y 458n, respectivamente.

Una vez convicto, el 22 de abril de 2020, el señor Fuentes fue clasificado y ubicado por el Departamento en custodia máxima. Posteriormente, allá para el 19 de septiembre de 2024, el Comité de Clasificación se reunió y evaluó el informe sobre el plan institucional rendido el 16 de septiembre de 2024, por la Técnica de Servicios Socio-Penales asignada al recurrente.

Culminada la evaluación rutinaria del plan institucional del recurrente, el 19 de septiembre de 2024, el Comité de Evaluación ratificó el nivel de custodia máxima por los próximos seis (6) meses. Entre otras consideraciones, el criterio rector del Comité fue el historial de violencia excesiva del señor Fuentes; en particular, la naturaleza de los actos delictivos que desembocaron en su convicción y sentencia (doble asesinato).

Inconforme con la determinación, el 20 de septiembre de 2024, el señor Fuentes solicitó su reconsideración. No obstante, la referida solicitud fue denegada por el Comité de Clasificación el 27 de septiembre de 2024.

Agotados los remedios administrativos, el señor Fuentes acudió oportunamente ante este foro intermedio y formuló seis (6) extensos señalamientos de error, los cuales se pueden resumir en que el Comité de Clasificación erró al ratificar el nivel de custodia máxima.

II

A

Es norma reiterada que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821 (2012). Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la **razonabilidad** de la actuación de la agencia. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013).

A su vez, el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo; y, (3) si las conclusiones de derecho fueron correctas. *Asoc. FCIAS. v. Caribe Specialty II*, 179 DPR 923, 940 (2010).

Igualmente, las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006). Es por ello, que la revisión judicial ha de limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron. *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004).

Así, pues, basados en la deferencia y razonabilidad, los tribunales no debemos intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013). Cabe señalar que, **en el contexto de las determinaciones administrativas sobre el nivel de custodia**, el Tribunal Supremo ha expresado que:

.　　　.　　　.　　　.　　　.　　　.　　　.　　　.

Según el Manual, **es al Comité de cada institución carcelaria a quien corresponde realizar la evaluación** periódica correspondiente al nivel de custodia asignado a los confinados. […]

Por lo general, la composición de estos comités la conforman **peritos en el campo** tales como técnicos sociopenales y oficiales o consejeros correccionales. Estos profesionales cuentan con la capacidad, la preparación, el conocimiento y la experiencia necesarios para atender las necesidades de los confinados y realizar este tipo de evaluaciones. Por esta razón, **una determinación formulada por el referido Comité debe ser sostenida por el foro judicial siempre que no sea arbitraria, caprichosa y esté fundamentada en evidencia sustancial**. Es decir, siempre que la decisión sea **razonable, cumpla con el procedimiento establecido en las reglas y los manuales, y no altere los términos de la sentencia impuesta**, **el tribunal debe confirmarlo**.

.　　　.　　　.　　　.　　　.　　　.　　　.　　　.

*Cruz v. Administración*, 164 DPR 341, 354-355 (2005). (Énfasis nuestro).

B

La Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1, dispone que será política pública del Estado reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva, y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social. *López Borges v. Adm. Corrección*, 185 DPR 603, 619 (2012).

Cónsono con nuestra Constitución, el Art. 10 del Plan de Reorganización Núm. 2-2011[1], estatuye que "[l]a población correccional será sometida a evaluaciones periódicas con el propósito de conocer y analizar su situación social, física, emocional y mental, historial delictivo e identificar sus capacidades, intereses, motivaciones, controles y limitaciones, a los fines de **clasificarlos y determinar el plan de acción a tomar en cada caso**, en armonía con los **principios de tratamiento individualizado y seguridad pública** enmarcados en los propósitos de este Plan". 3 LPRA Ap. XVIII. (Énfasis nuestro).

---

[1] *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*, 3 LPRA Ap. XVIII.

A tales fines, el Departamento aprobó el *Manual para la Clasificación de los Confinados*, Reglamento Núm. 9151, presentado el 22 de enero de 2020, y efectivo a partir del 20 de febrero de 2020. El propósito de la reglamentación es establecer un sistema organizado para ingresar, procesar y asignar a los confinados a instituciones y programas del Departamento. Art. II del Reglamento Núm. 9151. Como parte de la política de la agencia, se encuentra la clasificación "de acuerdo con el nivel de custodia restrictiva más bajo que se requiera, la asignación de vivienda y la participación de los confinados en programas de trabajo y educación, adiestramiento vocacional y recreación que sean apropiados para ellos". Art. III (1) del Reglamento Núm. 9151. Precisamente, el Tribunal Supremo ha explicado que "la importancia de la reducción del nivel de custodia, como parte del proceso de rehabilitación, se refleja en la regla que enuncia constantemente el [Reglamento Núm. 9151][2]: se tiene que ubicar a cada confinado en el nivel de custodia menos restrictivo posible". *López Borges v. Adm. Corrección*, 185 DPR, a la pág. 608.

De otro lado, el Artículo IV, Sección 1, del Reglamento Núm. 9151 establece que el Comité de Clasificación y Tratamiento es el responsable de evaluar las necesidades de seguridad y de los programas de los confinados sentenciados[3]. El Comité, pues, tiene a su cargo la evaluación de los confinados, en lo concerniente a sus necesidades, aptitudes, intereses, limitaciones y funcionamiento social. Art. IV, Sec. 2 (IV) del Reglamento Núm. 9151. Sus objetivos primordiales son la rehabilitación, la asignación de custodia y la seguridad pública. Art. IV, Sec. 2 (IV)(A) del Reglamento Núm. 9151.

---

[2] A pesar de que la opinión cita el *Manual de Clasificación* de 2000, los principios invocados permanecieron inalterados en la versión del 2020. Véase, *Perspectiva General* (I) del Reglamento Núm. 9151.

[3] El **plan institucional** se define como "una evaluación escrita de las necesidades de cada confinado en lo que respecta a programas y servicios, y las actividades programadas que se recomiendan para llenar esas necesidades. El plan será revisado durante el transcurso de encarcelamiento por lo menos una vez al año". Art. IV, Sec. 1 del Reglamento Núm. 9151.

El sistema consta de una clasificación inicial del confinado, seguida de un proceso de reclasificación[4] periódica de cada reo. En lo atinente, una **clasificación objetiva** se refiere al "proceso confiable y válido mediante el cual se clasifica a los confinados y se les subdivide en grupos, basándose en varias consideraciones, entre las que se incluyen: la severidad del delito, su historial de delitos anteriores, su comportamiento en las instituciones, los requisitos de seguridad y supervisión y las necesidades identificables de programas y servicios específicos". Art. IV, Sec. 1 del Reglamento Núm. 9151. La reglamentación establece, además, que la reclasificación de confinados es el procedimiento para la revisión de la asignación del nivel actual de custodia de cada confinado, con el fin de determinar cuán apropiada es esta. Art. IV, Sec. 7 (I) del Reglamento Núm. 9151. Al exponer los objetivos perseguidos por dicho sistema, el Reglamento Núm. 9151 dispone el uso del formulario *Escala de Reclasificación de Custodia (Casos Sentenciados)*, reproducido en el Apéndice K del cuerpo reglamentario, y aclara que:

.        .        .        .        .        .        .        .

[…] **La reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada**. Su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir.

La reevaluación de custodia se parece a la evaluación inicial de custodia, **pero recalca aún más en la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión.** Es importante que los confinados que cumplan sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución.

.        .        .        .        .        .        .        .

Art. IV, Sec. 7 (II) del Reglamento Núm. 9151. (Énfasis nuestro).

Por igual, el Reglamento Núm. 9151 describe los términos de custodia mediana, mínima y mínima/comunidad:

.        .        .        .        .        .        .        .

Mediana: Confinados de la población general que requieren un **grado intermedio de supervisión**. Estos confinados son asignados a celdas o dormitorios y son elegibles para ser

---

[4] Dicho Reglamento Núm. 9151 define la **reclasificación** como la "[r]evisión periódica de los confinados en lo que respecta a su progreso como parte del Plan Institucional, así como también a su categoría de custodia". Art. IV, Sec. 1 del Reglamento.

**asignados a cualquier labor o actividad que requiera supervisión de rutina** dentro del perímetro de seguridad de la institución. Se requiere de dos oficiales correccionales como escolta para realizar viajes, ya sean de rutina o de emergencia, fuera de la institución, y se utilizarán esposas con cadenas en todo momento. A discreción de los oficiales de escolta, se podrán utilizar otros implementos de restricción.

Mínima: Confinados de la población general que son elegibles para habitar en viviendas de menor seguridad y que pueden trabajar fuera del perímetro con un mínimo de supervisión. Estos confinados son elegibles para los programas de trabajo y actividades en la comunidad compatibles con los requisitos normativos. Estos individuos pueden hacer viajes de rutina o de emergencia fuera de la institución sin escolta, cuando tengan un pase autorizado, y pueden ser escoltados sin implementos de restricción.

Mínima/Comunidad: Confinados de la población general que están en custodia mínima, pero que han sido catalogados según las políticas del DCR como elegibles para programas comunitarios. Por lo general, estos son programas residenciales sin perímetro de seguridad alguno.

.          .          .          .          .          .          .          .

Art. IV, Sec. 1 del Reglamento Núm. 9151. (Énfasis nuestro).

En lo que nos compete, la segunda sección de la *Escala de Reclasificación de Custodia*, denominada *Evaluación de Custodia*, detalla el proceso para revisar y actualizar la evaluación inicial del confinado. La sección contiene la escala de reclasificación de custodia para los casos de confinados sentenciados y enumera ocho criterios para realizar la correspondiente evaluación. Estos son: (1) la gravedad de los cargos y sentencias actuales; (2) el historial de delitos graves previos; (3) el historial de fuga o tentativas de fuga; (4) el número de acciones disciplinarias; (5) las acciones disciplinarias previas serias; (6) las sentencias anteriores por delitos graves como adultos; (7) la participación en programas y tratamientos; y, (8) la edad actual del miembro de la población correccional. Ap. K, Sec. II, del Reglamento Núm. 9151.

Consecuentemente, una vez completados los ocho renglones de la *Evaluación de Custodia* en la *Escala de Reclasificación de Custodia*, a base del resultado que se obtenga, se recomienda un nivel de custodia, que puede variar entre máxima, mediana o mínima. El nivel de custodia según la escala es el siguiente: **5 puntos o menos, corresponde a una custodia**

**mínima**; 5 puntos o menos si el confinado tiene una orden de arresto o detención, corresponde a una custodia mediana; 6 a 10 puntos, corresponde a una custodia mediana; 7 puntos o más en los renglones 1 al 3, corresponde a una custodia máxima; y, 11 puntos o más en los renglones 1 al 8, corresponde a una custodia máxima. Ap. K, Sec. III, del Reglamento Núm. 9151.

Por otro lado, la *Escala de Reclasificación de Custodia* establece en la tercera sección unos criterios adicionales, tanto discrecionales como no discrecionales, que contemplan consideraciones especiales en el manejo de la asignación de niveles de custodia. Una **modificación discrecional** se refiere al "conjunto de factores específicos de clasificación que el personal puede usar para modificar la puntuación de clasificación de un confinado, pero solamente con la aprobación del supervisor de clasificación." Art. IV, Sec. 1 del Reglamento Núm. 9151. En cuanto a la **modificación no discrecional**, aunque la reglamentación omite definir el término, de su cuerpo se desprende que estos factores inciden en la clasificación de custodia y el funcionario evaluador no tiene discreción en cuanto a su aplicación, sino que debe limitarse a anotar si el confinado cumple o no con los criterios consignados. Ap. K, Sec. III (D) del Reglamento Núm. 9151.

Las **modificaciones discrecionales para un nivel de custodia más alto** que establece la reglamentación vigente son: (1) **la gravedad del delito**; (2) **el historial de violencia excesiva**; (3) la afiliación con gangas; (4) la dificultad en el manejo del confinado; (5) la reincidencia habitual; (6) el riesgo de fuga; (7) el comportamiento sexual agresivo; (8) los trastornos mentales o desajustes emocionales; (9) si representa una amenaza o peligro; (10) la desobediencia de las normas; y, (11) el reingreso por violación de normas. Ap. K, Sec. III (D) del Reglamento Núm. 9151.

De otra parte, las **modificaciones discrecionales para un nivel de custodia más bajo** son: (1) la gravedad del delito; (2) la conducta

excelente; (3) la conducta anterior excelente; y, (4) la estabilidad emocional del reo.

En atención a ello y en lo pertinente a este recurso, en *Lebrón Laureano v. Depto. de Corrección*, 209 DPR 489, 498 (2022), el Tribunal Supremo de Puerto Rico determinó que el criterio discrecional de "historial de violencia excesiva" **comprende las características violentas del delito y, por tanto, sí es extensible a la conducta del confinado fuera de la institución**.

Al tenor de lo anterior, "toda modificación discrecional deberá estar basada en documentación escrita que evidencia ajustes adecuados y que se ha beneficiado de los programas de tratamientos requeridos, proveniente de informes disciplinarios, informes de querellas, informes de libros de novedades, **documentos del expediente criminal** o social, y cualquier otra información o documento que evidencia ajustes o comportamiento del confinado contrario a las normas y seguridad institucional". Ap. K, Sec. III (D) del Reglamento Núm. 9151. (Énfasis nuestro).

Por lo tanto, la recomendación del Comité con relación a la reclasificación de custodia del confinado deberá estar basada en un análisis holístico de los diversos criterios objetivos y subjetivos que desglosa el Reglamento Núm. 9151. Con relación a este tema, el Tribunal Supremo de Puerto Rico ha expresado lo siguiente:

.     .     .     .     .     .     .     .

> La determinación administrativa relativa al nivel de custodia asignado a un confinado requiere que se realice un **balance de intereses adecuado**. Por una parte, estará el interés público de lograr la **rehabilitación del confinado**, así como mantener la **seguridad** institucional y general del resto de la población penal; de la otra, estará el interés particular del confinado de permanecer en un determinado nivel de custodia. Además, al momento de determinarse la procedencia de un cambio en el nivel de custodia, deberá considerarse una serie de **factores subjetivos y objetivos**, **para cuya atención se requiere la pericia de la Administración de Corrección**.

.     .     .     .     .     .     .     .

*Cruz v. Administración,* 164 DPR, 352. (Énfasis nuestro).

III

En este recurso, el recurrente plantea, en síntesis, que el Comité de Clasificación erró al utilizar las modificaciones discrecionales para ratificar el nivel de custodia más alto. No le asiste la razón.

En lo concerniente, el señor Fuentes arguye que el Comité no consideró los programas o tratamientos de los cuales participó mientras cumplía su sentencia en la institución de Guayama 1000. Además, sostuvo que la determinación del Comité violentaba las disposiciones del *Manual para la Clasificación de Confinados*.

Tal como discutimos, el proceso de reclasificación de custodia no necesariamente tiene como resultado el cambio de esta, ya que depende de una serie de factores discrecionales y no discrecionales, los cuales han sido consignados en el Reglamento Núm. 9151. En este caso, surge del expediente que, según la puntuación arrojada en la *Evaluación de Custodia* realizada al señor Fuentes, este cualificó para un nivel de custodia mediana. No obstante, al aplicar los factores no discrecionales y discrecionales, el Departamento procedió a ratificar el nivel de custodia máxima. Específicamente, aplicó el criterio de que el recurrente posee una orden de deportación y un historial de violencia excesiva. A continuación, revisamos en detalle la *Escala de Reclasificación de Custodia*, origen de esta causa.

El aludido documento consta de seis secciones. La primera incluye la información del recurrente. En esta sección, el Comité consignó que la reclasificación era una de naturaleza rutinaria.

La segunda sección, *Evaluación de Custodia*, contiene tres incisos a los que se les confiere una puntuación predeterminada. En el de *gravedad de los cargos* que purga el reo, el señor Fuentes obtuvo la puntuación extrema de 6, ya que entre los delitos por los cuales extingue su condena se encuentra el delito de asesinato. En cuanto al *historial de delitos graves previos* y al *historial de fuga o su tentativa*, se le asignó 0 en ambos acápites. Así pues, la suma de los primeros tres incisos es **6**.

En los renglones cuatro, cinco y seis, el Comité asignó sendos 0 al *número de acciones disciplinarias*, *acciones disciplinarias previas serias* y *sentencias anteriores por delitos graves como adulto*. En cuanto a los criterios siete y ocho, el Comité asignó 0 en participación de programas de tratamiento, por el recurrente haber *participado y culminado el programa de tratamiento*, y, -1, pues el señor Fuentes tiene entre 25 y 39 años de edad. Ambas secciones suman **-1**. Por consiguiente, el resultado de esta sección totaliza **-1**.

La tercera sección comprende seis factores. En el "A" se establece que "5 puntos o menos en renglones 1-8 con órdenes de arresto o detención", que corresponde a una custodia **mediana**. De acuerdo con la suma de los criterios evaluados, al señor Fuentes le corresponde dicho renglón. En el "B", el Comité no marcó ninguno de los apartados; estos son: *custodia prospectiva*, *joven adulto (Caso YCA)*, *psiquiátrica*, *60 años o más de edad*, *riesgo de suicidio*, *problemas médicos*, *impedimento físico*, entre otras no especificadas.

En los factores "D" y "E", correspondientes a las **modificaciones discrecionales** para un nivel de custodia más alto o más bajo, respectivamente, el Comité marcó el renglón sobre orden de deportación. Con relación al criterio "C", sobre **modificaciones no discrecionales**, el Comité marcó el apartado que lee: "Historial de violencia excesiva". Entonces, en el último criterio de esta sección, el "F", el Comité recomendó el nivel de custodia **máxima** para el recurrente, asignado a custodia protectiva.

La cuarta, sexta y séptima secciones son de naturaleza administrativa. En estas, se ratificó la custodia máxima y se consignó la entrega del documento al recurrente.

Examinado el expediente, surge que el eje central de la determinación del Comité fue el historial de violencia excesiva desplegada por el señor Fuentes al cometer el delito por el cual extingue la pena, así como la complejidad que ha presentado en su proceso de rehabilitación.

Según el Comité hizo constar, en el 2020, el recurrente fue sentenciado a extinguir una pena de 158 años, por el delito de asesinato, según tipificado en el Art. 93 del Código Penal de Puerto Rico, 33 LPRA secc. 5142, y por violaciones a los Artículos 5.04 y 5.15 de la hoy derogada *Ley de Armas de Puerto Rico*, Ley Núm. 404-2000, 25 LPRA secs. 458c y 458n, respectivamente.

De otra parte, surge del acuerdo del Comité que, contrario a lo planteado por el recurrente, sí se consideró su participación en distintos programas, entre ellos, las terapias de control de impulsos y el certamen de dibujos de Acción de Gracias en la institución Guayama 1,000. Es decir, en el ejercicio de su conocimiento experto, conforme al balance de intereses involucrados de rehabilitación y seguridad, así como las directrices establecidas en el Reglamento Núm. 9151, el Departamento ejecutó las normas aplicables y, a su vez, hizo constar algunos logros del recurrente.

Como discutimos, la reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada. Consecuentemente, la puntuación obtenida en la *Escala de Reclasificación*, por sí sola, no conlleva un cambio automático en la clasificación del nivel de custodia. En su lugar, la evaluación de todos los factores dispuestos en el Reglamento 9151 requiere que se tomen en consideración otros aspectos, como lo son las modificaciones discrecionales y no discrecionales. En atención a lo anterior, el Comité aplicó la modificación discrecional sobre "historial de violencia excesiva". Esa actuación, como ya establecimos, no constituyó un abuso de discreción.

En resumen, la determinación administrativa merece nuestra deferencia. Como mencionamos, en *Lebrón Laureano v. Depto. de Corrección*, 209 DPR 489 (2022), el Tribunal Supremo de Puerto Rico reiteró que el Departamento de Corrección y Rehabilitación merece particular deferencia en lo relacionado al proceso de clasificación de

custodia de los confinados. De igual forma, reiteró que, si en la evaluación de custodia, la agencia cumple con el procedimiento de las reglas y manuales, en ánimo, no solo de salvaguardar la efectiva rehabilitación del confinado, sino también la seguridad institucional y de la población confinada, sin alterar los términos de la sentencia impuesta, la decisión es una razonable.

IV

Por los fundamentos antes expresados, confirmamos la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones