Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2024-056[1]

| FREDDY GARCÍA TATIS | | REVISIÓN ADMINISTRATIVA procedente de la Comisión Apelativa del Servicio Público |
|---|---|---|
| Recurrido | | |
| Vs. | KLRA202400255 | Caso Núm. 2015-06-3839 |
| CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO | | Sobre: |
| Recurrente | | Reclutamiento y Selección |

Panel integrado por su presidente, el Juez Rivera Colón, la Jueza Romero García y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de febrero de 2025.

Comparece la parte recurrente, la Corporación del Fondo del Seguro del Estado ("CFSE"), y solicita la revocación de una *Resolución* emitida por la Comisión Apelativa del Servicio Público de Puerto Rico ("CASP"). Por medio del dictamen recurrido, la CASP anuló el procedimiento de selección, y reclutamiento para ocupar el puesto de Supervisor de Radiología en la Oficina Regional de Ponce de la CSFE.

Por los fundamentos a continuación, *confirmamos* la resolución recurrida.

**-I-**

La parte recurrida, el señor Freddy García Tatis es un empleado de carrera en la CFSE desde el 1996. Al momento de los hechos relatados en la apelación administrativa, la parte recurrida ocupaba el puesto de Técnico de Radiología, CT SCAN y MRI en la

---

[1] Mediante la OATA-2024-056 se designa a la Hon. Giselle Romero García, debido que uno de los anteriores integrantes del panel no puede continuar participando en la adjudicación del recurso en el caso de referencia, por la entrada al mismo de una parte o abogado (a) incluido (a) en sus pre-inhibiciones.

Oficina Regional de Ponce. El 2 de febrero de 2015 el director asociado interino de Recursos Humanos envió una misiva a la entonces presidenta del Banco Gubernamental de Fomento para solicitar su endoso para convocar dos puestos generales de Supervisor Regional.

El 27 de febrero de 2015 la entidad gubernamental emitió el endoso de aprobación para la contratación del puesto de Supervisor de Radiología en la Oficina Regional de Ponce. La CFSE incluyó a la parte recurrida como candidato para el puesto. La CFSE entrevistó a los candidatos, y el 3 de junio de 2015 el recurrido fue notificado sobre su inelegibilidad, y la selección de otro candidato.

El 30 de junio de 2015 la parte recurrida presentó por derecho propio la Apelación Administrativa Núm. 2015-06-3839, *Freddy García Tatis v. Corporación del Fondo del Seguro del Estado* ante la CASP. Solicitó la anulación del proceso de selección y nombramiento realizado. Aseguró que, el procedimiento fue contrario a las disposiciones de la Ley Núm. 66-2014, conocida como *La Ley especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado*, según enmendada, 3 LPRA secs. 9101-9153.

El 30 de marzo de 2022 la CASP celebró la Vista Adjudicativa del caso, y el asunto quedó sometido. El 20 de marzo de 2024, la CASP emitió, y notificó, la resolución recurrida donde declaró *Ha Lugar* la apelación administrativa, y concedió tres remedios:

1. **SE ANULA** el proceso de reclutamiento y selección del puesto número 5688- Supervisor de Radiología.

2. **SE ANULA** la Convocatoria número 52-2 para ocupar el puesto número 5688- Supervisor de Radiología en la Oficina Regional de Ponce.

3. **SE ORDENA** a la APELADA a ocupar el puesto número 5688- Supervisor de Radiología, conforme a las disposiciones de la Ley Núm. 66-2014.

A solicitud de parte, la CASP emitió una resolución en reconsideración donde confirmó la anulación del reclutamiento, pero ordenó ocupar el puesto "conforme a las disposiciones legales aplicables en la actualidad". Inconforme, la CFSE comparece mediante el presente recurso de revisión judicial, y señala el siguiente error:

> Erró la Comisión Apelativa del Servicio Público al aplicar el derecho en el caso de autos y finalmente declarar HA LUGAR la apelación del recurrido mediante la cual pretendía impugnar el proceso de reclutamiento y selección para el puesto número 5688 -Supervisor de Radiología. Particularmente, erró la Comisión al determinar que, la Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico, Ley 66-2014, estado de derecho vigente al momento de los hechos incontrovertidos del caso – exigir un proceso de reclutamiento para el puesto en cuestión, contrario lo dispuesto por dicha legislación. Conllevando a su vez, la anulación del proceso de reclutamiento y selección del puesto número 5688 – Supervisor de Radiología, la Convocatoria número 52-2 para ocupar el puesto número 5688 – Supervisor de Radiología en la Oficina Regional de Ponce y finalmente ordenó a la CFSE a ocupar el puesto número 5688 – Supervisor de Radiología, conforme a las disposiciones de la Ley 66-2014. Es menester acotar que, la Comisión se reconsideró en su Resolución final del 19 de abril de 2024 en cuanto a exigir el reclutamiento al amparo de la Ley 66, cuando la misma ya no era un estatuto vigente.

La parte recurrida compareció mediante alegato escrito, y solicita la confirmación de la resolución recurrida. Procedemos a resolver con el beneficio de la comparecencia de ambas partes.

*-II-*

*-A-*

La Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico, Ley Núm. 66-2014, 3 LPRA sec. 9101, *et seq.,* se promulgó con el propósito de declarar un estado de emergencia en el gobierno y adoptar un plan para manejar las consecuencias de la crisis fiscal y económica que

atraviesa el país. *Véase*, Exposición de Motivos, Ley Núm. 66-2014, *supra.*

En lo pertinente a este recurso apelativo, el Artículo 9 de la Ley Núm. 66-2014, 3 LPRA sec. 9115, dispone:

> **Las Entidades de la Rama Ejecutiva no realizarán nombramientos de empleados regulares o de carrera, transitorios o irregulares a partir del 1ro de julio de 2014 y _mientras dure la vigencia de esta Ley_.** Se exceptúan de esta prohibición nombramientos de empleados que (i) proveen un servicio directo esencial a la ciudadanía; (ii) son indispensables e imprescindibles para asegurar el cumplimiento de los deberes ministeriales de la agencia; (iii) generan ingresos directos al Gobierno; (iv) sustituyan servicios que eran provistos mediante subcontratación al 30 de junio de 2014, cuando se pueda probar que esto redunda en un ahorro neto, considerando todos los costos relativos entre ambas opciones; (v) reclutamiento de empleados transitorios ejerciendo labores en el mismo puesto; (vi) son sufragados en más de un cincuenta (50) por ciento por fondos federales o ingresos propios; (vii) sean necesarios como mecanismo de pareo para fondos federales o como requerimiento de obtener tales fondos; o (viii) responden a un requerimiento específico y directo de un tribunal o foro administrativo competente para ocupar el puesto. **Además, cuando fuera necesario ocupar un puesto vacante, se deberá optar como primera alternativa el traslado o destaque de empleados regulares y transitorios**. …[.] **_Se entenderá suspendida_** toda disposición o norma en convenio, ley, reglamentación o disposición administrativa que resulte contraria o interfiera con lo aquí dispuesto. Lo anterior incluye, sin que se entienda como una limitación, toda disposición o norma que establezca o pretenda establecer como obligación la ocupación de puestos adicionales, las condiciones en que se remplazan empleados, la categoría de puestos ocupados; o que restrinja, o pretenda restringir de cualquier forma, la facultad del Gobierno de determinar el volumen o tipo de plantilla necesaria para su funcionamiento y para la provisión de servicios a la ciudadanía.
>
> La Entidad de la Rama Ejecutiva, en su proceso de nombramiento, incluirá como parte de la documentación necesaria para perfeccionarlo, además del juramento y carta de nombramiento, un documento adicional donde el jefe de la Entidad de la Rama Ejecutiva o el funcionario delegado autorizado a nombrar, certifica el cumplimiento con las disposiciones de este Artículo, y el candidato a ser nombrado reconoce el riesgo de nulidad por incumplimiento y su derecho a exigir copia de las autorizaciones requeridas en este Artículo. La Oficina de Gerencia y Presupuesto establecerá, mediante normativa, el formato del documento a ser

cumplimentado por las partes, que será replicado y utilizado de forma íntegra en su contenido y formato. **Todo nombramiento efectuado en contra de las disposiciones de este Artículo será nulo**. ...

El Inciso (g) del Artículo 11 de la Ley Núm. 66-2014, reitera, que, "[l]as limitaciones establecidas en este Artículo aplicarán a todo empleado de una Entidad de la Rama Ejecutiva, irrespectivo de disposición contraria en cualquier ley, normativa, reglamento, convenio colectivo, políticas, manuales de empleo, cartas circulares, cartas contractuales, certificaciones, reglamentos, reglas y condiciones de empleo, cartas normativas, planes de clasificación o retribución". 3 LPRA sec. 9117 (g).

El Artículo 14 de la Ley Núm. 66-2014 dispuso que, la Comisión Apelativa del Servicio Público tendrá jurisdicción primaria exclusiva para atender apelaciones surgidas como consecuencia de acciones o decisiones tomadas conforme a las disposiciones de la Ley Núm. 66-2014. Las medidas de reducción de gastos en la Rama Ejecutiva impuestas por la Ley Núm. 66-2014 tuvieron efecto hasta el 1ro de julio de 2017. Artículo 4, Ley Núm. 66-2014, 3 LPRA sec. 9103.

El 3 de enero de 2017, fue aprobada la *Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico,* Ley Núm. 3-2017, 3 LPRA sec. 9391, *et seq.* El estatuto extendió la vigencia de las cláusulas de control de gastos en la Rama Ejecutiva contenidas en la Ley Núm. 66-2014 hasta el 1ro de julio de 2021. Entre ellas, la prohibición de nuevos nombramientos a puestos vacantes contenida en el Artículo 9 de la Ley Núm. 66-2014, 3 LPRA sec. 9115.

*-B-*

Es norma reiterada que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son

estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. *Super Asphalt Pavement, Corp. v. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico, et al.*, 206 DPR 803, 820-821 (2021). Por su parte, la Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, según enmendada, establece el alcance de la revisión judicial de una determinación administrativa. A saber:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> **Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.**
>
> **Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal**.
>
> 3 LPRA sec. 9675. (Énfasis nuestro).

Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad de la actuación de la agencia. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013). Igualmente, las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006).

Así pues, la parte afectada por las determinaciones de hechos de una agencia **debe mostrar la existencia de otra prueba en el récord** que reduzca o menoscabe el valor probatorio de la evidencia impugnada, para así demostrar que la determinación del organismo fue irrazonable, a la luz de la totalidad de la prueba que tuvo ante su consideración. *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999).

Exigir tal demostración inicial tiene el propósito de **evitar que la parte afectada impugne las determinaciones de hechos con meras alegaciones**, a la vez que sostiene la presunción de corrección y legalidad de que disfrutan las decisiones administrativas.

*Íd.*, pág. 905. (Énfasis nuestro).

Por su lado, las conclusiones de derecho de una agencia son revisables en todos sus aspectos por los tribunales. *Íd.*, pág. 907. Sin embargo, ello no significa que el tribunal las puede descartar libremente, ya que estas merecen deferencia. *Íd.*

Debido a que toda sentencia o determinación administrativa está protegida por una presunción de corrección y validez, la parte que acude al tribunal de apelaciones tiene el deber de colocar a este foro en posición de conceder el remedio solicitado. *Morán v. Martí,* 165 DPR 356, 366 (2005).

[...] **Es decir, quien las impugne tiene el deber insoslayable, para prevalecer, de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa**.

*Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006). (Énfasis nuestro).

En ausencia de tal prueba, las determinaciones de hechos de la agencia deben ser sostenidas. *Íd.* A su vez, si las determinaciones de hecho impugnadas se basan,

**en la prueba testifical desfilada y la credibilidad que le mereció al juzgador, es imprescindible que se traiga la transcripción de la vista celebrada o una exposición narrativa de la prueba a la consideración del foro revisor. En ausencia de tal prueba, difícilmente se podrá descartar la determinación impugnada.**

*Íd.*, pág. 92. (Énfasis nuestro).

Por último, es norma reiterada que la revisión judicial de determinaciones administrativas ha de limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, irrazonable, o fuera del

marco de los poderes que se le delegaron. *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004). Ahora bien, el Tribunal Supremo ha sido enérgico al enfatizar que:

> [...] **para que los tribunales puedan revisar una decisión administrativa, es vital que las agencias expresen claramente sus determinaciones de hecho y las razones para su dictamen, incluyendo los hechos básicos de los cuales, a través de un proceso de razonamiento e inferencia, se derivan aquéllos**. La expresión de los fundamentos de una decisión no puede ser pro forma, y debe reflejar que la agencia ha cumplido con su obligación de evaluar y resolver los conflictos de prueba del caso ante su consideración. [...]. De igual forma, en los procedimientos adjudicativos informales, aun cuando no se exige una explicación basada en determinaciones de hecho a la manera de los procedimientos formales, **deben mediar razones suficientes que pongan en conocimiento a las partes y al tribunal de los fundamentos que propiciaron tal decisión**.

*Íd.* (Énfasis nuestro).

**-C-**

Al amparo de la Ley Núm. 182-2009, conocida como la Ley de Reorganización y Modernización de la Rama Ejecutiva 2009, 3 LPRA sec. 8821 *et seq.*, se creó el Plan de Reorganización Núm. 2 de 2010, aprobado el 26 de julio de 2010, mejor conocido como el Plan de Reorganización de la Comisión Apelativa del Servicio Público, 3 LPRA Ap. XIII. Mediante este último se estableció la nueva Comisión Apelativa del Servicio Público ("CASP"), en la cual se fusionó la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público y la Comisión de Relaciones del Trabajo del Servicio Público.

Específicamente, la CASP es un foro administrativo cuasi-judicial en la Rama Ejecutiva, que se especializa en asuntos obrero-patronales y del principio de mérito. *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1051 (2013); Sección 2 del Plan de Reorganización Núm. 2, *supra.* La creación de la CASP respondió al reconocimiento de la labor de los foros administrativos, la ayuda

en descongestionar los tribunales, la experiencia y especialización de las agencias, la uniformidad de sus fallos y remedios, y el bajo costo de la litigación administrativa para las personas afectadas. Sección 2 del Plan de Reorganización Núm. 2, *supra.*

La CASP es un ente adjudicativo creado con jurisdicción apelativa exclusiva para atender y adjudicar las apelaciones de los empleados públicos del Gobierno de Puerto Rico. *Colón Rivera et al. v. ELA,* supra, pág. 1053. La Sección 13 del Plan de Reorganización Núm. 2, *supra,* establece las condiciones con las cuales una parte debe cumplir para acudir ante la CASP en apelación.

> La precitada legislación reza como sigue:
>
> El procedimiento para iniciar una querella o apelación por una parte adversamente afectada en aquellos casos contemplados bajo el Artículo 11 de este Plan será el siguiente:[2]
>
> La parte afectada deberá presentar escrito de apelación a la Comisión dentro del término jurisdiccional de treinta (30) días, contados a partir de la fecha en que se le notifica la acción o decisión, objeto de apelación, en caso de habérsele notificado por correo, personalmente, facsímile o correo electrónico, o desde que advino en conocimiento de la acción o decisión por otros medios.

### -III-

Al momento de la convocatoria objeto de esta revisión, el Artículo 9 de la Ley Núm. 66-2014 disponía, como primera opción

---

[2] La Sección o Art. 11 del Plan lee como sigue:

La Comisión tendrá jurisdicción primaria exclusiva sobre:

(a) Las reclamaciones surgidas como consecuencia de acciones o decisiones del patrono en violación a las disposiciones de las secs. 1451 *et seq.* de este título.

(b) Las reclamaciones surgidas como consecuencia de acciones o decisiones de las organizaciones laborales, sindicales u obreras y de los representantes exclusivos en violación a las disposiciones de las secs. 1451 *et seq.* de este título.

(c) Las reclamaciones surgidas como consecuencia de acciones o decisiones de las organizaciones laborales, sindicales u obreras y de los representantes exclusivos en violación a las disposiciones de las secs. 100 a 100e del Título 29.

Ningún caso podrá ser radicado luego de transcurridos seis (6) meses de los hechos que dan base al mismo, excepto que la parte contra quien se haya radicado, intencionalmente haya ocultado los hechos que dan base al mismo o que durante el período de seis (6) meses luego de los hechos, la parte promovente haya estado legalmente incapacitada para radicarlo, o que no tuvo conocimiento de los hechos durante ese período. En estos casos, la Comisión determinará si la dilación en radicar el mismo es razonable conforme a los principios generales de incuria.

para ocupar un puesto vacante, "el traslado o destaque de empleados regulares y transitorios". 3 LPRA sec. 9394. Fundamentado sobre la anterior premisa, la CASP concluyó que, el proceso de convocatoria, reclutamiento, y selección del puesto en disputa no cumplió con la Ley Núm. 66-2014.

En lo que, a los empleados de carrera se refiere, la Ley Núm. 66-2014 prohibió expresamente el reclutamiento de nuevo personal, y creó unas excepciones. Sin embargo, como primera alternativa, antes de procurar alguna excepción, la CFSE tenía que optar por el traslado o destaque de empleados de la corporación pública.

Según expuesto, toda determinación administrativa está protegida por una presunción de corrección y validez. Por tanto, la parte que acude ante nos tiene el deber de colocar a este foro en posición de conceder el remedio solicitado. Por ello, correspondía a la CFSE, en su recurso de revisión judicial, establecer que existía prueba en el récord que sustentara que no tuvo otra opción disponible que optar por una convocatoria para el puesto. No obstante, la CFSE no cumplió con esa carga procesal.

El expediente no contiene evidencia sustancial que demuestre como primera opción el intento de un traslado entre clases y niveles de puestos para ocupar el puesto vacante de Supervisor de Radiología. Véase, Artículo 10, Ley Núm. 66-2014, 3 LPRA sec. 9116.

El expediente demuestra lo contrario, la CSFE publicó la convocatoria para el puesto, y presumió haber complido con su responsabilidad al concluir la imposibilidad de un traslado debido a que, los dos solicitantes al puesto ocupaban puestos diferentes al anunciado. Por tanto, según la lógica de la parte recurrente, el traslado era imposible. Empero, la Ley Núm. 66-2014 imponía sobre el patrono una responsabilidad activa de procurar un

traslado como primera alternativa, y no, meramente esperar que, alguno de los solicitantes resultara ser un candidato idóneo para un traslado.

Ante el claro lenguaje utilizado por el legislador, y ante la ausencia de evidencia sustancial en el expediente que demuestre el cumplimiento de la CFSE con las disposiciones de la Ley Núm. 66-2014, solo podemos concluir a favor de las acciones tomadas por la CASP en la resolución recurrida. La Ley Núm. 66-2014 confirma la anulación radical de cualquier transacción de personal contraria a la norma establecida. Véase, Artículo 9, Ley Núm. 66-2014, 3 LPRA sec. 9115 ("Todo nombramiento efectuado en contra de las disposiciones de este Artículo será nulo".)

Actualmente, la administración de los recursos humanos en la Rama Ejecutiva es regida por la Ley Núm. 8-2017, *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico*, 3 LPRA sec. 1469, *et seq.* Este estatuto reafirma la creación, y el establecimiento de dos servicios para la administración de los recursos humanos: de carrera, y de confianza. Todas las disposiciones de la Ley Núm. 8-2017 son aplicables a las agencias que integran el "Sistema para la Administración y Transformación de los Recursos Humanos del Gobierno de Puerto Rico", según instituido por el citado precepto.

Ahora bien, por disposición de la Sec. 5.2 del Artículo 5 de la referida ley, las corporaciones públicas quedaron excluidas de la aplicación de la Ley Núm. 8-2017. En consecuencia, deben contar con reglamentos de personal que, incorporen el principio de mérito en la administración de sus recursos humanos, a tono con las disposiciones de la Ley Núm. 8-2017. 3 LPRA sec. 1471a.

A la luz de lo anterior, resulta forzoso colegir que la CFSE no derrotó la presunción de corrección y validez de la determinación final de la CASP. En consecuencia, concluimos que, la CASP actuó

conforme a derecho al anular el proceso de reclutamiento y convocatoria para el puesto de Supervisor de Radiología para la Oficina Regional de Ponce, y ordenar a la CFSE ocupar el puesto conforme al derecho vigente. La CASP actuó de forma razonable, apegada a la prueba que tuvo ante su consideración, y dentro de sus poderes delegados.

Por tanto, procede la confirmación de la resolución recurrida.

### -*IV*-

Por los fundamentos antes expuestos, que hacemos formar parte de este dictamen, *confirmamos* la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones