Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XII

| MIGUEL ACOSTA MARTÍNEZ<br>Recurrente<br><br><br>v.<br><br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br>Recurrido | TA2025RA00364 | *Revisión Administrativa* procedente del Departamento de Corrección y Rehabilitación<br><br>Núm. Querella Disciplinaria: 413-25-001<br><br>Sobre: Reiterada Violación Constitucional al debido proceso de Ley Proceso de Revocación de Programa de Desvío |
|---|---|---|

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 19 de febrero de 2026.

Comparece el señor Miguel Acosta Martínez (señor Acosta Martínez o recurrente), a través de recurso de *revisión judicial,* solicitando que revoquemos una "determinación" del Departamento de Corrección y Rehabilitación (DCR o recurrido), emitida el 12 de septiembre de 2025. Mediante dicho "dictamen", la agencia recurrida decidió no acoger la recomendación favorable que le fue referida por la Oficial Examinadora (OE) a cargo de la evaluación de la extensión del beneficio del Programa de Desvío al señor Acosta. Al así decidir, el DCR no emitió propiamente una Resolución que se ajustara a los requerimientos de la Ley de Procedimiento Administrativo Uniforme, *infra,* al omitir las

determinaciones de hechos, el derecho pertinente y la aplicación de este a aquél, y por ello ordenamos devolver el asunto para que se adhiera a ello.

## I. Resumen del tracto procesal

El 26 de abril de 2023, el señor Acosta Martínez, siendo confinado, comenzó a beneficiarse de un programa de desvío ofrecido del DCR. En específico, este fue egresado bajo el Programa de Pase Extendido por Condición de Salud al amparo de la Ley 25 de 1992, en tanto padecía de condiciones de salud de carácter fisiológico severo: diabetes, problemas cardiacos, alta presión, historial de cáncer, problemas de visión, falta de movilidad, entre otros. Según surge del expediente ante nuestra consideración, mientras el recurrente estuvo egresado bajo dicho programa, permaneció encamado la mayor parte del tiempo en la residencia de su hermana, Maximina Acosta Martínez, ubicada en el municipio de Cabo Rojo. Además, se encontraba bajo supervisión electrónica, con la que había cumplido sin alerta alguna.

No obstante, por razones que son cuestionadas en el escrito ante nuestra consideración, el 31 de mayo de 2024, el DCR tramitó el reingreso del señor Acosta Martínez al sistema correccional, a su estado de confinamiento. Como explicación para tal curso de acción el DCR sostuvo que la intención del reingreso ¨fue reevaluar si persistían las condiciones deformantes e incapacitantes severas que fueron la razón de su excarcelación bajo el programa¨.[1] En particular, el recurrente fue reingresado el 4 de junio de 2025 *para reevaluación médica.*

Como resultado, el 21 de agosto de 2025, el DCR emitió un *Informe de Querella de Incidente Disciplinario* en el cual concluyó que procedía la revocación del programa de desvío, puesto que el señor Acosta no cumplía con los criterios necesarios para beneficiarse de tal privilegio. Dicho *Informe* se basó, a su vez, en una *Reevaluación del Médico Especialista en*

---

[1] *Resolución*, Entrada 3 de SUMAC (TPI), pág. 4.

*Medicina Interna,* suscrita por la señora Miranda Iglesias, donde se indicó que, al momento de la reevaluación, el señor Acosta no sufría de una condición de salud en fase terminal, por lo que su expectativa de vida no era de seis meses o menos. A tenor, el DCR determinó que procedía la revocación del privilegio en virtud del *Reglamento sobre Procedimientos para Atender los Casos Especiales de las Personas que están Afectadas por el Síndrome de Inmunodeficiencia Adquirida y otras Enfermedades Terminales y Condiciones Deformantes e Incapacitantes Severas en el Sistema Correccional de Puerto Rico*, Reglamento Núm. 7818 del 2 de marzo de 2010 (Reglamento Núm. 7818).

> Lo anterior, dado que el Artículo X del citado cuerpo reglamentario contempla la reevaluación médica de los participantes, y permite la revocación del privilegio cuando se encuentre que la prognosis de vida del miembro de la población correccional haya cambiado y esta sea mayor que al momento de la otorgación del privilegio de pase extendido.[2]

Lo descrito dio lugar a que, el 4 septiembre de 2025, fuera celebrada una vista administrativa para considerar la revocación del referido privilegio. Según consta en el informe suscrito por la Oficial Examinadora del DCR que presidió la misma, la persona que emitió la *Reevaluación del Médico Especialista en Medicina Interna,* señora Miranda Iglesias, no compareció a la vista, a pesar de haber sido debidamente citada, por lo que dicho documento no fue admitido en evidencia. Entonces, luego de permitirse otra prueba documental y testifical por parte del DCR, y de que la representación legal del recurrente tuviera la oportunidad de contrainterrogar a esta última, la Oficial Examinadora emitió su recomendación al DCR. En su informe, la Oficial Examinadora incluyó determinaciones de hechos, alusión al derecho aplicable y la aplicación de este a los hechos. En definitiva, **concluyó que el señor Acosta no había violado las condiciones del privilegio contenidas en el contrato suscrito con el DCR, pues no habían cesado las condiciones de salud**

---

[2] *Escrito en Cumplimiento de Orden*, Entrada 5 de SUMAC (TA), pág. 4.

**que lo hicieron elegible para beneficiarse del programa de desvío, por lo que recomendó su reinstalación al desvío**.

Una vez sometido el informe de la Oficial Examinadora a la atención del DCR, el Secretario Auxiliar de Programas y Servicios de dicha agencia emitió una *Resolución (Revocación del Privilegio)* el 12 de septiembre de 2025, en la que rechazó la recomendación de la Oficial Examinadora; por tanto, ordenó la revocación del programa de desvío. En específico, el funcionario del DCR determinó que: "al evaluar la totalidad del expediente no se acoge la recomendación".[3]

Insatisfecho, el señor Acosta presentó una *Petición de Reconsideración* el 10 de octubre de 2025, la cual fue declarada No Ha Lugar mediante *Determinación* el 24 de octubre de 2025.

Es así como el señor Acosta acudió ante nosotros, el 24 de noviembre de 2025, mediante un recurso de *revisión judicial*, en el cual señaló la comisión del siguiente error:

> Erró el Departamento de Corrección y Rehabilitación cuando violentó el derecho constitucional a un debido proceso de ley del aquí peticionario al emitir una resolución sin determinaciones de hechos, ni conclusiones de derecho, que sustente la decisión final de la agencia. Esto anterior, dado a que la recomendación de la Oficial Examinadora a la agencia fue la no revocación del beneficio dado a que no hay base legal o incumplimiento alguno de condición que así lo justifique.

Habiéndole concedido oportunidad al DCR de presentar escrito en oposición, compareció ante nosotros dicha agencia a través del Procurador General de Puerto Rico (el Procurador), mediante *Escrito en Cumplimiento de Resolución*. En lo esencial, el Procurador coincidió con la parte recurrente al destacar que la *Resolución (Revocación del Privilegio)* no era propiamente una determinación final de la agencia, al no contar con determinaciones de hechos y conclusiones de derecho que sustentaran lo allí decidido. Por tanto, **se allanó** a que el asunto fuera remitido o devuelto

---

[3] *Resolución (Revocación del Privilegio)*, Entrada 2 de SUMAC (TPI), pág. 4.

al DCR para que se cumpliera con los requerimientos de ley atinentes al contenido de una Resolución final.

Con el beneficio de la comparecencia de ambas partes, disponemos del recurso ante nuestra consideración.

**II. Exposición de Derecho**

**a.**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.*, dispone el alcance de la revisión judicial de las determinaciones de las agencias. Tanto la referida ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T–JAC v. Caguas Centrum Limited*, 148 DPR 70, 80 (1999).

Las decisiones de los foros administrativos están investidas de una presunción de regularidad y corrección. *Pérez López v. Departamento de Corrección,* 208 DPR 656 (2022); *García v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008); *Vélez Rodríguez v. Administración de Reglamentos y Permisos*, 167 DPR 684, 693 (2006); *Rivera Concepción v. A.R.Pe.*, 152 DPR 116, 123 (2000). La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales, **a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo**. *E.L.A. v. P.M.C.*, 163 DPR 478, 488-490 (2004); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 130 (1998). (Énfasis provisto).

Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de

la agencia. *Rebollo v. Yiyi Motors,* 161 DPR 69, 76 (2004). Conforme a la cual, habrá que determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción. *Mun. De San Juan v. CRIM,* 178 DPR 164, 175 (2010); *Asoc. Tulip/Monteverde v. J.P.,* 171 DPR 863, 873 (2007). Por tanto, la revisión judicial de una determinación administrativa se circunscribe a determinar si: (1) el remedio concedido por la agencia fue apropiado; (2) **las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo, y (3) las conclusiones de derecho fueron correctas**. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Torres Rivera v. Pol. de PR,* 196 DPR 606, 626-627 (2016). (Énfasis provisto).

Cuando un tribunal llega a un resultado distinto al de la agencia, debe determinar en ese trayecto si la divergencia con dicha agencia **es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa**, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.* (Énfasis provisto). Por esta razón, se afirma que la función revisora del foro intermedio se circunscribe a considerar si la determinación de la agencia **es razonable**, ya que se persigue evitar que este tribunal revisor sustituya el criterio de la agencia por el suyo. *Hernández, Álvarez v. Centro Unido,* supra, pág. 616; *Otero v. Toyota,* supra, pág. 728. (Énfasis provisto).

**b**.

La Sección 3.14 de la LPAU, 3 LPRA sec. 9654, ordena que una orden o resolución final **deberá incluir y exponer separadamente determinaciones de hechos, conclusiones de derecho que fundamentan la adjudicación y la disponibilidad del recurso de reconsideración o revisión según sea el caso**. (Énfasis provisto). Sobre

lo mismo, en *Crespo Claudio v. O.E.G.*, 173 DPR 804, 812-813 (2008), el

Tribunal Supremo de Puerto Rico expresó:

> Ahora bien, para que una orden o resolución sea considerada final, se requiere que la misma ponga fin al caso ante la agencia y que tenga efectos sustanciales sobre las partes. [...] Además, para que dicha decisión tenga carácter de finalidad **debe incluir determinaciones de hecho, conclusiones de derecho y una advertencia sobre el derecho a solicitar reconsideración o revisión judicial**. 3 L.P.R.A. sec. 2164. Igualmente, la misma debe estar firmada por el Jefe de la Agencia o por un funcionario autorizado [...] *Id.* (Énfasis provisto).

### III. Aplicación del Derecho a los hechos

Según debe advertir el lector a este punto, está ante nosotros una controversia de umbral que prima sobre otros asuntos sustantivos planteados por la parte recurrente, y es la que versa sobre el alegado incumplimiento del DCR con los requerimientos de la LPAU cuando se emite una Resolución final. En específico, las partes coinciden en señalar que el DCR no incluyó en la *Resolución* recurrida determinaciones de hechos, exposición de derecho ni mucho menos explicaciones o fundamentos con los cuales sostener la revocación del privilegio de desvío por condiciones de salud que se encontraba disfrutando el señor Acosta Martínez, a pesar del Informe emitido por la Oficial Examinadora que recomendó su preservación.

El error señalado es patente y el asunto no necesita mayor elaboración. Una vez fue celebrada la vista administrativa para considerar la impugnación a la revocación del desvío que se encontraba disfrutando el recurrente y entregado el Informe por la Oficial Examinadora favorable a este, el DCR se limitó a no acogerlo con la lacónica expresión, "al evaluar la totalidad del expediente no se acoge la recomendación".[4] Ello demuestra absoluta carencia de explicación o fundamento para sustentar tal proceder.

---

[4] Valga señalar que el DCR no hizo expresión alguna referente a que acogiese el Informe presentado por la Oficial Examinadora y lo hiciera parte de su dictamen. Claro, esto se explica porque, precisamente, no estuvo de acuerdo con la recomendación plasmada en dicho Informe.

Por una parte, tal como ya citado, por voz expresa del segundo párrafo de la Sección 3.14 de la LPAU, *supra,* se ordena que una orden o resolución final **deberá incluir y exponer separadamente determinaciones de hechos, conclusiones de derecho que fundamentan la adjudicación y la disponibilidad del recurso de reconsideración o revisión según sea el caso**. No tenemos que repetir que la presunta *Resolución* revocatoria del privilegio incumplió crasamente con tales requerimientos mínimos.

Por la otra parte, las omisiones en la Resolución recurrida nos impiden apreciar, valorar o sopesar si la agencia revisada fue razonable al emitir su decisión. Por lo mismo, tampoco podemos determinar si la apreciación de los hechos por parte de la agencia recurrida estuvo basada en evidencia sustancial que obre en el expediente administrativo ni si la conclusión alcanzada resulta correcta en derecho. Y es que, en ausencia de una determinación administrativa motivada, no cabe sostener la presunción de razonabilidad que le reconoce nuestro ordenamiento, sino más bien lo contrario, que ha mediado arbitrariedad, lo que lesiona el debido proceso de ley.

Finalmente, reconocemos que las conclusiones y recomendaciones contenidas en un informe de un oficial examinador no obligan a la agencia, sino que esta mantiene su facultad para dictaminar sobre las cuestiones en controversia. *Henríquez v. Consejo de Educación* Superior, 120 DPR 194, 208 (1987). No obstante, aunque la agencia conserve su facultad para rechazar la recomendación contenida en un informe redactado por el oficial examinador designado, sigue siéndole aplicable los requerimientos de la LPAU discutidos, referentes a la inclusión de determinaciones de hechos, exposición de derecho y la aplicación de este a aquél. A fin de cuentas, el informe que prepara un oficial examinador es parte del récord administrativo que también nos corresponde aquilatar

cuando se solicita nuestra intervención con un dictamen administrativo. *Henríquez v. Consejo de Educación* Superior, supra, pág. 208.

## IV. Parte dispositiva

Por los fundamentos que anteceden, ordenamos la devolución inmediata del asunto al Departamento de Corrección y Rehabilitación para que, sin dilación alguna, emita una resolución fundamentada, según los requerimientos de ley aquí discutidos.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones